T.C. Memo. 2000-271


UNITED STATES TAX COURT


AGRI-CAL VENTURE ASSOCIATES, FREDERICK H. BEHRENS,
TAX MATTERS PARTNER, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12530-90, 12532-90,     Filed August 28, 2000.
            15034-91, 15041-91
            15047-91, 15050-91,
            15058-91.

---

[1] Cases of the following petitioners have been consolidated herewith:  Crop Associates-1986, Frederick H. Behrens, Tax Matters Partner, docket No. 12532-90; Agri-Venture Fund, Frederick H. Behrens, Tax Matters Partner, docket No. 15034-91; Houston Farm Associates-II, Robert A. Wright, Tax Matters Partner, docket No. 15041-91; Agri-Venture Associates, Frederick H. Behrens, Tax Matters Partner, docket No. 15047-91; Dixie Ventures-1985, Frederick H. Behrens, Tax Matters Partner, docket No. 15050-91; Texas Farm Venturers, Robert A. Wright, Tax Matters Partner, docket No. 15058-91.  Prior reports with respect to Crop Associates–1986, Frederick H. Behrens, Tax Matters Partner v. Commissioner, docket No. 12532-90, appear at 113 T.C. 115 (1999), and T.C. Memo. 2000-216.

Five of the seven petitioners in these seven consolidated cases have raised the affirmative defense of statute of limitations. Those five petitioners argue that the notices of final partnership administrative adjustment in question were not timely because they were issued after expiration of the sec. 6229(a), I.R.C., assessment period.

<u>Held</u>: In all five cases, either a valid Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, was signed by the tax matters partner or another person authorized in writing by the partnership to enter into such an agreement, or no valid partnership return was filed that would fix the time to assess tax under sec. 6229(a), I.R.C.

<u>Steven Mather</u> and <u>Kenneth Barish</u>, for petitioners.

<u>William H. Quealy, Jr.</u>, <u>Alice M. Harbutte</u>, <u>Henry T. Schafer</u>, <u>Guy Glaser</u>, <u>Laurel Robinson</u>, and <u>Ann Durning</u>, for respondent.

Table of Contents

                                                              Page
MEMORANDUM FINDINGS OF FACT AND OPINION...................... 5
  I.  Introduction............................................ 5
 II.  Generally Applicable Provisions of Law.................. 6
      A.  Period of Limitations Applicable to Assessment
          of Partnership Items................................ 6
      B.  Affirmative Defense; Burden of Proof; Importance
          of Contract Principles.............................. 8
III.  AVA..................................................... 9
      A.  FINDINGS OF FACT.................................... 9
          1.  Formation of AVA; Certificate of
              Limited Partnership............................ 9
          2.  Agreement of Limited Partnership.............. 10
          3.  AMCOR; Agreement To Make AMCOR Co-General
              Partner; Amendment of AVA Certificate......... 14
          4.  Partnership Returns........................... 15
          5.  Designation of TMP............................ 16
          6.  Consent To Extend the Time To Assess Tax...... 17
          7.  AVA FPAA...................................... 18
      B.  OPINION............................................ 18
          1.  1984 Taxable Year............................. 18
              a.  Introduction.............................. 18
              b.  Requirement That Partnership Make a Return
                  Signed by a Partner....................... 19
              c.  California Revised Limited Partnership
                  Act; AVA Limited Partnership Agreement.... 20
              d.  AMCOR Was Not a General Partner in the
                  Partnership on February 1, 1985........... 21
              e.  AVA's Other Arguments..................... 24
                  (1)  Stipulation.......................... 24
                  (2)  Agency............................... 24
                  (3)  Miscellaneous........................ 27
              f.  Conclusion................................ 27
          2.  1985 Taxable Year............................. 27
              a.  Introduction.............................. 27
              b.  Code and Regulations...................... 28
              c.  September 30 Letter Designates TMP........ 29
              d.  Timelines of Designation.................. 33
              e.  AVA's Other Arguments..................... 34
              f.  Conclusion................................ 36
 IV.  AVF.................................................... 36
      A.  FINDINGS OF FACT................................... 36
      B.  OPINION............................................ 37

Page

  V.  DV-85.................................................... 38
      A.  FINDINGS OF FACT.................................. 38
      B.  OPINION........................................... 39
          1.  Introduction.................................. 39
          2.  Relevant Law.................................. 40
          3.  Discussion.................................... 42
          4.  Conclusion.................................... 45
 VI.  HFA-II................................................. 45
      A.  FINDINGS OF FACT.................................. 45
      B.  OPINION........................................... 46
          1.  Introduction.................................. 46
          2.  AMCOR Was Not a Partner....................... 47
          3.  Agency........................................ 48
          4.  Authority of Limited Partner.................. 48
          5.  Conclusion.................................... 49
VII.  TFV.................................................... 49
      A.  FINDINGS OF FACT.................................. 49
          1.  Formation of TFV.............................. 49
          2.  Agreement of Limited Partnership.............. 50
          3.  Agreement To Make AMCOR Co-General Partner.... 50
          4.  Partnership Returns........................... 51
          5.  Designation of TMP............................ 52
          6.  Consents...................................... 53
          7.  TFV FPAA...................................... 53
      B.  OPINION........................................... 53
          1.  1984 Taxable Year............................. 53
          2.  1985 Taxable Year............................. 55
 IX.  CONCLUSION............................................. 56

## MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:

## I.  Introduction

This report concerns the affirmative defense of statute of limitations raised by five of the petitioners in these seven consolidated cases.[2]  Those five petitioners and respondent have agreed that, at this time, respondent will not claim fraud in response to such affirmative defense but may, at some later time, make such response.  No additional response by respondent will be necessary, however, since, on the grounds before us, we do not sustain any affirmative defense of statute of limitations.

The partnerships raising the affirmative defense of statute of limitations are Agri-Venture Associates (AVA), Agri-Venture Fund (AVF), Houston Farm Associates II (HFA-II), Dixie Venture-1985 (DV-85), and Texas Farm Venturers (TFV).  The issues we must address are whether (1) for 1984, with respect to AVA and TFV, and for 1985, with respect to HFA-II, a valid partnership return was filed, which would fix the period provided for in section 6229(a) for assessing any tax, and (2) for 1985, with

---

[2] Frederick H. Behrens, Tax Matters Partner, is petitioner in three of those five cases, and Robert A. Wright, Tax Matters Partner, is petitioner in the other two.  To avoid confusion in the discussion that follows, we will use the name of the partnership, rather than the name of the tax matters partner, to refer to the petitioner in each case:  For instance, we will refer to the petitioner in Agri-Ventures Associates, Frederick H. Behrens, Tax Matters Partner, as Agri-Ventures Associates (AVA).

respect to AVA, AVF, DV-85, HFA-II,[3] and TFV, a valid Form 872-P, Consent to Extend the Time to Assess Tax Attributable to Items of Partnership (Form 872-P), was executed by a person with the authority to bind the partnership pursuant to section 6229(b)(1)(B).

For convenience and clarity, we set forth separately our findings of fact and opinion with respect to each of the five partnerships (sometimes, collectively, the partnerships). We precede that discussion, however, with a discussion of certain provisions of law applicable generally with respect to the partnerships.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## II. Generally Applicable Provisions of Law

### A. Period of Limitations Applicable to Assessment of Partnership Items

These consolidated cases arise in connection with respondent's determination of certain partnership items. See secs. 6221, 6226(a) and (b). Section 6229(a) provides that the period for assessing any Federal income tax attributable to any

---

[3] For HFA-II, the issues are in the alternative because, if we find that no valid partnership return was filed for 1985, which, if filed, would have fixed the period for assessing any tax, we need not address whether there was a valid consent to extend such period.

partnership item for the partnership's taxable year shall not expire before 3 years after the later of (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing a return for that year (the 3-year period or the section 6229(a) assessment period). Section 6229(b)(1)(A) and (B), however, provides that the 3-year period may be extended. The 3-year period may be extended with respect to any partner by an agreement entered into by respondent and such partner, and may be extended with respect to all partners by an agreement entered into by respondent and (1) the tax matters partner or (2) any other person authorized by the partnership in writing to enter into such an agreement. See sec. 6229(b)(1)(A) and (B), respectively. The agreement must be executed prior to the expiration of the 3-year period, and any subsequent agreement must be executed before the expiration of the period previously agreed upon.

Section 6229(d) suspends the running of the section 6229(a) assessment period upon the mailing of a notice of final partnership administrative adjustment (FPAA) to the tax matters partner (TMP) of the partnership. The running of the section 6229(a) assessment period is suspended for the period in which an action may be brought challenging the FPAA. If such an action is brought during that period, the suspension continues until the decision of the Court therein becomes final and for 1 year thereafter. See sec. 6229(d).

Section 6229(d) makes clear that, if, for any partnership taxable year, no partnership return is filed, any tax attributable to a partnership item arising in that year may be assessed at any time.

B. <u>Affirmative Defense; Burden of Proof; Importance of Contract Principles</u>

In <u>Amesbury Apartments, Ltd. v. Commissioner</u>, 95 T.C. 227 (1990), we dealt with a claim that the section 6229(a) assessment period had expired. We stated:

> The expiration of the period of limitation on assessment is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proving its applicability. Rules 39, 142(a). To establish this defense, the taxpayer must make a prima facie case establishing the filing of the partnership return, the expiration of the statutory period, and receipt or mailing of the notice after the running of the period. <u>Miami Purchasing Service Corp. v. Commissioner</u>, 76 T.C. 818, 823 (1981); <u>Robinson v. Commissioner</u>, 57 T.C. 735, 737 (1972). Where the party pleading the defense makes such a showing, the burden of going forward with the evidence shifts to respondent who must then introduce evidence to show that the bar of the statute is not applicable. <u>Adler v. Commissioner</u>, 85 T.C. 535, 540 (1985). Where respondent makes such a showing, the burden of going forward then shifts back to the party pleading the affirmative defense to show that the alleged exception to the expiration of the period is invalid or otherwise inapplicable. <u>Adler v. Commissioner</u>, <u>supra</u> at 540. The burden of proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations. <u>Adler v. Commissioner</u>, <u>supra</u> at 540.
>
> An agreement to extend the period of limitation for assessment and collection is not a contract but rather a waiver of a defense. <u>Stange v. United States</u>, 282 U.S. 270 (1931); <u>Piarulle v. Commissioner</u>, 80 T.C. 1035, 1042 (1983); <u>Tallal v. Commissioner</u>, 77 T.C. 1291 (1981), affd. on other issues 778 F.2d 275 (5th Cir.

1985).  In determining the validity of such a waiver, however, contract principles are important, because section 6229(b) requires a written agreement, and we look to the objective manifestations of mutual assent to determine the terms of such an agreement.  See Schulman v. Commissioner, 93 T.C. 623, 639 (1989); Piarulle v. Commissioner, supra at 1042.

Id. at 240-241.  Those statements are applicable here.

## III.  AVA

### A.  FINDINGS OF FACT

#### 1.  Formation of AVA; Certificate of Limited Partnership

AVA (sometimes, the partnership) is a limited partnership formed pursuant to the California Revised Limited Partnership Act (sometimes, CRLPA), Cal. Corp. Code secs. 15611 through 15723 (West 1991).  At the time the petition was filed, the partnership's principal place of business was in Coachella, California.[4]

On July 1, 1984, a certificate of limited partnership for the partnership (the AVA certificate) was filed with the secretary of state of the State of California (California Secretary of State).  The AVA certificate states that it is presented for filing pursuant to Cal. Corp. Code sec. 15621 (West 1991).  It shows Frederick H. Behrens, George L. Schreiber, and Robert A. Wright as general partners of the partnership (the initial general partners).

---

[4]  That is also true with respect to the petitions filed by AVF, DV-85, HFA-II, and TFV, and we so find.

## 2. <u>Agreement of Limited Partnership</u>

Also on July 1, 1984, the initial general partners and certain others entered into an agreement of limited partnership with respect to the partnership (the AVA limited partnership agreement or the agreement). Among other things, the agreement establishes the authority and duties of the general partners and restricts the rights of the limited partners. In part, the agreement provides:

1. <u>"Definitions"</u>

    \*     \*     \*     \*     \*     \*     \*

    1.6 "Managing Agent" means American Agri-Corp, or its designated successor as provided for in this Agreement.

    \*     \*     \*     \*     \*     \*     \*

9.4 <u>"Role of Limited Partners."</u> Except as otherwise provided in this Agreement, a Limited Partner shall not take part in or interfere in any manner with the conduct or control of the business of the Partnership and shall have no right or authority to act for or bind the Partnership. \* \* \*

    \*     \*     \*     \*     \*     \*     \*

11. <u>"Rights, Powers and Duties of the General Partners"</u>

    11.1 <u>"Management and Control of the Partnership."</u>

    11.1.a Subject to the consent of the Limited Partners where required by this Agreement, the General Partners, with the authority granted under this Agreement, shall have the exclusive right to manage the business of the Partnership and are hereby authorized to take any action of any kind and to do anything and everything they deem necessary in accordance with the provisions of this Agreement. In

decisions by the General Partners, vote by a majority of them shall be determinative.

11.1.b  Except as expressly provided herein, the authority of the General Partners to manage the business of the Partnership shall be exercised only by the General Partners.

11.1.c  No Limited Partner (except one who may also be a General Partner, and then only in his capacity as General Partner is within the scope of his authority hereunder) shall participate in or have any control over the Partnership business or shall have any authority or right to act for or bind the Partnership.  * * *

        *    *    *    *    *    *    *

11.1.e  The General Partners shall have the right and authority, without the requirement of obtaining the approval or consent of the Limited Partners, to admit an additional Co-General Partner to the Partnership, providing the existing General Partners remain the Managing General Partners and do not relinquish any of their duties, responsibilities, obligations or liabilities incurred in connection with this Agreement.

11.2  "Authority of the General Partners."

11.2.a  Except to the extent otherwise provided herein, the General Partners (or their designated agent) for, and in the name and on behalf of the Partnership, are hereby authorized:

        *    *    *    *    *    *    *

(11)  to engage in any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the Partnership, as may be lawfully carried on or performed by a partnership under the laws of each state in which the partnership is then formed or qualified.

\*   \*   \*   \*   \*   \*   \*

11.2.b.  Every instrument purporting to be the action of the Partnership and duly authorized and executed by the General Partners shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of delivery thereof, this Agreement was in full force and effect and that the execution and delivery of such instrument was duly authorized by the Partners and the Partnership.  \* \* \*

\*   \*   \*   \*   \*   \*   \*

22.  "Amendments"

22.1  "Additional Partners."  Each Limited Partner, additional Limited Partner, General Partner or subsequent General Partner shall become a signatory hereof by signing such number of counterpart signature pages to this Agreement and such other instrument or instruments, and in such manner, as the General Partners shall determine.  By so signing, each shall be considered to have adopted, and to have agreed to be bound by all the provisions of this Agreement, as amended from time to time in accordance with the provisions of this Agreement, provided that no such counterpart shall be binding until it shall have been accepted by the General Partners pursuant to the provisions of this Agreement.

\*   \*   \*   \*   \*   \*   \*

22.4  "Execution of Amendments."   If this Agreement shall be amended to reflect the designation of a new General Partner and the continuation of the business of the Partnership, such amendment shall be signed by such new General Partner.

22.5  "Filing and Recording of Amendments."  In making any amendments, there shall be prepared and filed and recorded by the General Partners such documents and certificates as shall be required to be prepared and filed pursuant to the \* \* \* [CRLPA] \* \* \*

\*   \*   \*   \*   \*   \*   \*

26. "Miscellaneous"

\* \* \* \* \* \* \*

26.6 "Tax Matters Partner." The General Partners shall designate one of them to be the Tax Matters Partner, and he shall possess the administrative powers and responsibilities required by the Tax Equity and Fiscal Responsibility Act of 1982.

With respect to the duties of the Managing Agent (managing agent), the agreement provides, among other things, that the managing agent shall manage all of the day-to-day activities of the partnership and "will perform the financial and tax planning duties for the Partnership as well as oversee the Partnership's operational and tax reporting procedures." The managing agent's duties are further specified in a management agreement between American Agri-Corp and the partnership that authorizes the former "to furnish such financing and tax planning services as per the General Partners request."

3.  <u>AMCOR; Agreement To Make AMCOR Co-General Partner;</u>
    <u>Amendment of AVA Certificate</u>

Amcor Capital, Inc., formerly American Agri-Corp (hereafter, without distinction, AMCOR), was organized in 1981 by Messrs. Behrens, Schreiber, and Wright.[5]

Following are pertinent portions of a document (the AMCOR purchase document) dealing with the purchase of general partnership interests in certain partnerships (including AVA):

AMERICAN AGRI-CORP

December 12, 1985

Mr. Fred H. Behrens
Mr. George L. Schreiber
Mr. Robert A. Wright


AMERICAN AGRI-CORP
5000 Birch Street
East Tower, Suite 610
Newport Beach, CA 92660

SUBJECT:  PURCHASES OF A GENERAL PARTNERSHIP
          IN CERTAIN PARTNERSHIPS

Gentlemen:

You are Co-General Partners of the following California
limited partnerships:

* * * [There follows a list of 13 partnerships,
including, AVA.]

It is understood that the three of you, as individuals,
collectively own a 1 percent interest in each of these
partnerships.  American Agri-Corp is desirous of
purchasing 50 percent of your collective position so
that it would hold a 1/2 percent interest, as a Co-
General Partner, in each of the above partnerships.

---

[5]  This finding is applicable to all the partnerships.

- 15 -

American Agri-Corp agrees to buy, and you agree to sell, a one-half percent interest in the above general partnerships for a total consideration of $375,000 or $125,000 to each of you.  It is understood that American Agri-Corp assumes all the rights, duties, and obligations of a 50 percent Co-General Partner in the above named partnerships.

Sincerely,                UNDERSTOOD AND AGREED TO:

American Agri-Corp        By:

_____/s/_____         _____/s/_____
Fred H. Behrens           Fred H. Behrens
Chairman

_____/s/_____         _____/s/_____
George L. Schreiber       George L. Schreiber
Vice Chairman

_____/s/_____         _____/s/_____
Robert A. Wright          Robert A. Wright
Senior Vice President

On December 23, 1985, an amendment to the AVA certificate, adding AMCOR as a general partner, was filed with the California Secretary of State.

    4.  Partnership Returns

For tax purposes, the partnership makes its return on the basis of a calendar year.  For 1984 and 1985, the partnership prepared Forms 1065, U.S. Partnership Return of Income (Forms 1065, and the AVA 1984 and 1985 Forms 1065, respectively). Respondent received the AVA 1984 and 1985 Forms 1065 at his Fresno, California, service center on March 27, 1985, and April 14, 1986, respectively.  Each of such returns shows the partnership's address as:  C/O AMCOR, "5000 BIRCH ST., STE 610, EAST TOWER, NEWPORT BEACH, CA 92660".  The AVA 1984 Form 1065 is

signed "Joseph O. Voyer Treasurer".  It shows the date of that signature as February 1, 1985.  It does not state the organization, if any, of which Joseph O. Voyer was treasurer. The partnership never had a treasurer; Mr. Voyer was never a partner in the partnership.  Mr. Voyer was an officer and employee of AMCOR.

Neither the AVA 1984 or 1985 Forms 1065 designates any partner as the TMP of the partnership.

### 5.  Designation of TMP

In 1988, Deborah R. Gaither, a revenue agent employed by respondent, was conducting an examination of various AMCOR sponsored partnerships.  In September 1988, Ms. Gaither prepared a letter for signature by Messrs. Behrens and Schreiber, which she carried to Messrs. Behrens and Schreiber, who signed the letter on September 30, 1988 (the September 30 letter), and immediately returned it to her.  Pertinent portions of the September 30 letter follow:

Sept. 30, 1988

Internal Revenue Service
24000 Avila Road
Laguna Niguel, California 92677

RE:  TAX MATTERS PARTNER

Gentlemen:

As referenced in the Limited Partnership Agreement, the General Partners have designated the following to be the Tax Matters Partner for the 1985 tax year and until Partnership termination:

       George L. Schreiber
       5000 Birch Street, Suite 610
       Newport Beach, California  92660
       SSN 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

The above designation is for the following partnerships:

* * * [There follows a list of 25 partnerships, including: "Agri-Venture Associates  33-0044218".]

Sincerely,


| \s\ | \s\ |
| --- | --- |
| Fred H. Behrens, Chairman | George L. Schreiber |
| American Agri-Corp | General Partner |

| \s\ |
| --- |
| George L. Schreiber, Vice President |
| American Agri-Corp |

The September 30 letter is stamped "Received, Oct. 4, 1988, Laguna Niguel District".

    6.   <u>Consent To Extend the Time To Assess Tax</u>

Following are pertinent portions of a Form 872-P (AVA Form 872-P for 1985), executed by George L. Schreiber, "Tax Matters Partner", on September 30, 1988, and by a representative of respondent's on October 4, 1988:

AGRI-VENTURE ASSOCIATES, partnership, of 5000 BIRCH STREET, SUITE 610, NEWPORT BEACH, CA 92660, and the District Director of Internal Revenue * * * consent and agree as follows:

> (1) The amount(s) of any Federal income tax with respect to any person on any partnership item(s) for the above partnership for the period(s) ended December 31, 1985 may be assessed at any time on or before April 30, 1991. If a notice of Final Partnership Administrative Adjustment is sent to the partnership, the time for assessing the tax for the period(s) stated in the notice of Final Partnership Administrative Adjustment will not end until 1 (one) year after the date on which the determination of partnership items becomes final.

The AVA Form 872-P for 1985 shows AVA's taxpayer identification number as 33-0044218.

### 7. AVA FPAA

On April 10, 1991, respondent issued an FPAA to the partnership, addressed to "Tax Matters Partner" (the AVA FPAA), for its 1984 and 1985 taxable years.

### B. OPINION

#### 1. 1984 Taxable Year

##### a. Introduction

Respondent issued the AVA FPAA to the partnership on April 10, 1991. Since such date is more than 3 years after the last day for filing the AVA 1984 Form 1065, see section 6072(a), we must determine whether that date is also more than 3 years after a valid AVA 1984 Form 1065 was received by respondent. See sec. 6229(a). If it is not, then the AVA FPAA was timely to suspend the running of the section 6229(a) assessment period, and AVA's affirmative defense of statute of limitations fails for 1984. See also sec. 6229(c)(3). Respondent has responded to

AVA's affirmative defense of the statute of limitations by averring that the AVA 1984 Form 1065 is invalid because it was not executed in conformance with the Internal Revenue Code. Respondent is correct that only a return as required by the Internal Revenue Code (a valid return) will fix the time for the running of the period to assess tax (i.e., the statute of limitations). See Plunkett v. Commissioner, 41 B.T.A. 700, 711 (1940), affd. 118 F.2d 644 (1st Cir. 1941). "Failure to satisfy the requirements for filing a return is fatal to the validity and timeliness of the return." Elliott v. Commissioner, 113 T.C. 125, 128 (1999). Petitioner argues that the AVA's 1984 Form 1065 is a valid return.

   b.   Requirement That Partnership Make a Return Signed
        by a Partner

Section 6031 requires that, for each taxable year, every partnership shall make a return of income.

In pertinent part, section 6063 provides: "The return of a partnership made under section 6031 shall be signed by any one of the partners."

The AVA 1984 Form 1065 was signed by Joseph O. Voyer, "Treasurer". The parties have stipulated that Mr. Voyer, as Treasurer of AMCOR, was a corporate officer with authority under the regulations to execute returns and other statements on behalf of AMCOR. The parties have further stipulated that, if AMCOR is

determined to have been a general partner in the partnership for Federal income tax purposes when the AVA 1984 Form 1065 was signed by Mr. Voyer, on February 1, 1985, then such return is valid. We must, thus, determine whether AMCOR was a partner in the partnership on February 1, 1985.

### c. California Revised Limited Partnership Act; AVA Limited Partnership Agreement

CRLPA section 15641 provides as follows:

§15641. Admission of additional general partners

Unless otherwise provided in the partnership agreement, after the filing of a certificate referred to in Section 15621, a general partner may be admitted only (a) with the written consent of each general partner and such affirmative vote of limited partners as is required in accordance with the provisions of subdivision (f) of Section 15636 and the last paragraph of Section 15636 or (b) with the written consent of each partner in accordance with the provisions of subdivision (c) of Section 15681.

Cal. Corp. Code sec. 15641 (West 1991).

As set forth supra in section III.A.2, section 11.1.e of the AVA limited partnership agreement accorded to the general partners the "right and authority, without the requirement of obtaining the approval or consent of the Limited Partners, to admit an additional Co-General Partner to the Partnership". The agreement, therefore, provided an alternative to the otherwise mandatory provisions of CRLPA section 15641 (requiring some form of assent by the limited partners). Pursuant to CRLPA section

15641 and the agreement, the initial general partners had the authority to admit AMCOR as a general partner.

### d. AMCOR Was Not a General Partner in the Partnership on February 1, 1985

Notwithstanding that the initial general partners had the authority to admit AMCOR to the partnership as a general partner, the question remains whether they exercised that authority on or before February 1, 1985.  On the record before us, we are not persuaded that they did.

Mr. Wright testified that, "with respect to the 1985 year", it was the design of the initial general partners to each sell one-half of his interest in the partnership to AMCOR.  Mr. Wright further testified that, although the initial partners intended such sale to be effective January 1, 1985, documentation of such sale was not prepared until some time during 1985:  "We didn't make a big deal as to when it was done.  It was just something that we contemplated."  Mr. Wright also testified that the partnership reported for tax purposes that AMCOR was a partner for the whole of the year.

The AMCOR purchase document evidences the agreement of the initial general partners to sell, and AMCOR to buy, a one-half percent interest in AVA and 12 other limited partnerships for a purchase price of $375,000, of which one-third was to be paid by

AMCOR to each initial general partner.  The AMCOR purchase agreement is dated December 12, 1985, and it is not retrospective in its discussion of such sale:  It states that the initial general partners "own" a 1-percent interest in the partnership and AMCOR "is desirous" of purchasing one-half of that interest. Because of the substantial purchase price to be paid to each initial general partner, we think it a fair inference that the initial general partners would take no actions to admit AMCOR to the partnership as a co-general partner until they had received payment.  Payments totaling $375,000 would be documented by checks, receipts, evidence of withdrawals or deposits, or the like, which could establish the fact of such payments on or before February 1, 1985.  AVA's failure to produce such evidence leads to the inference that either such evidence does not exist or would be negative to petitioner.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946) ("the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable"), affd. 162 F.2d 513 (10th Cir. 1947).  Putting such inference together with the execution of the AVA purchase document on December 12, 1985, and the filing of the amendment to the AVA certificate on December 23, 1985, adding AMCOR as a general partner, leads us to

believe that AMCOR was not admitted to the partnership as co-general partner until after February 1, 1985.

We find some additional support for that conclusion in the AVA limited partnership agreement, which, although it is silent on how the initial general partners are to exercise their authority to admit a person as a co-general partner, specifically addresses how additional partners are to become signatories to the agreement. Section 22.1 of the agreement, see supra section III.A.2, requires a prospective partner to execute the agreement "and such other instrument or instruments * * * as the General Partners shall determine" in order to become a signatory to the agreement. Moreover, the second sentence of section 22.1 states: "By so signing, each [new partner] shall be considered to have adopted, and to have agreed to be bound by all the provisions of this Agreement". See also section 22.4 of the agreement (amendment of agreement to reflect designation of a new general partner shall be signed by such new general partner). AVA has failed to show that an officer of AMCOR executed the agreement or any other required instrument on or before February 1, 1985. While we do not conclude that such executions are a precondition to a person's being admitted as a partner, we think that the absence of such executions supports our conclusion that AMCOR was not admitted as a partner on or before February 1, 1985.

For the reasons stated, AVA has failed to prove that AMCOR was admitted to the partnership as a general partner on or before February 1, 1985. The fact that the partnership may have filed its tax return for 1985 consistent with AMCOR's being a partner for the whole year is not determinative; we assume that the return was prepared after the close of 1985.

### e. AVA's Other Arguments

#### (1) Stipulation

AVA argues that, by way of stipulation, respondent has admitted that AMCOR was a general partner in the partnership throughout 1985. AVA relies on a stipulation of facts filed January 14, 1992, in furtherance of a motion for summary judgment made in a prior consolidation of certain AMCOR test cases. The following language is contained in that stipulation of facts:

> Fred Behrens, George Schreiber, and Robert Wright remained as general partners in the partnerships [including AVA] * * * throughout 1985. American Agri-Corp. was also a general partner throughout 1985. As stated in the Preamble of this Stipulation, <u>this fact is stipulated to only for purposes of disposition of Respondent's motion for partial summary judgment</u> in the above-referenced cases. [Emphasis added.]

A stipulation is in the nature of a contract and will bind parties only to the terms actually agreed upon. See Rule 91(e); e.g., <u>Stamos v. Commissioner</u>, 87 T.C. 1451, 1455 (1986). As such, the stipulation on which AVA relies as an admission is without effect because, by its terms, its effectiveness was

limited to respondent's motion for partial summary judgment, which was disposed of long ago.

    (2)  <u>Agency</u>

AVA argues that, even if AMCOR was not a partner in the partnership on February 1, 1985, AMCOR, as managing agent, had the authority from AVA to execute the AVA 1984 Form 1065.

Section 6063 requires that a partnership return be signed by any one of the partners, and respondent argues that section 6063 is to be taken literally, so that a partnership return must be signed by a partner "and not by a partner's agent." Respondent also argues that AVA has failed to prove that AMCOR's agency relationship with the partnership encompassed the signing of AVA's tax return.

The evidence establishes that AMCOR had a certain limited authority to act for the partnership, e.g., management of all "day to day activities", and was to "oversee the Partnership's operational and tax reporting procedures." <u>Supra</u> sec. III.A.2. Respondent is correct that AVA has failed to prove AMCOR's authority to file tax returns on behalf of the partnership. Moreover, we agree with respondent that section 6063 requires a partner's signature and not the signature of a partner's agent. Section 601.504(a), Statement of Procedural Rules, addresses the requirements for filing powers of attorney. Paragraph (a)(6) thereof states:

> Signing tax returns. The filing of a power of attorney
> does not authorize the recognized representative to
> sign a tax return on behalf of the taxpayer unless such
> act is both -
>
> > (i) permitted under the Internal Revenue Code
> > and regulations thereunder (e.g., the
> > authority to sign income tax returns is
> > governed by the provisions of §1.6012-1(a)(5)
> > of the Income Tax Regulations); and
> >
> > (ii) specifically authorized in the power of
> > attorney.

AVA does not claim that any power of attorney was filed with respondent. Nevertheless, we find the regulation instructive as to the circumstances under which an agent may make a return for a taxpayer. Even were we to accept, arguendo, that section 6063 permits a partnership return to be made by an agent of a partner, the Secretary has not provided by regulation for such action. While section 1.6012-1(a)(5), Income Tax Regs., authorizes the return of an individual to be made by an agent in certain circumstances (and upon the condition that the return is accompanied by a power of attorney specifically authorizing the agent to make the return), section 1.6013-1, Income Tax Regs., providing for the signing of partnership returns, does not, by its terms, authorize a partnership return to be made by an agent of a partner. As stated, AVA has not shown any authority for an agent to make a partnership return for a partner. The Supreme Court has said that a taxpayer must be meticulously compliant with all the named conditions in order to secure the benefit of a

statute of limitations.  See <u>Lucas v. Pilliod Lumber Co.</u>, 281 U.S. 245, 249 (1930).  Mr. Voyer's signature on the AVA 1984 Form 1065 does not comply with section 6063, and it is not adequate to constitute it a valid return.

### (3)  <u>Miscellaneous</u>

AVA also argues that (1) there was only a technical flaw in the AVA 1984 Form 1065, (2) since the partners of AVA relied on the AVA 1984 Form 1065, they ratified it, and (3) respondent accepted the return, and, therefore, it was effective to start the running of the period of limitations.  None of those arguments are persuasive.

### f.  <u>Conclusion</u>

We find that the AVA 1984 Form 1065 was not signed by any partner, and, consequently, it was not a valid partnership return.  See <u>Plunkett v. Commissioner</u>, 41 B.T.A. 700, 711 (1940), affd. 118 F.2d 644 (1st Cir. 1944).  Therefore, AVA has failed to satisfy the first element necessary for it to establish its affirmative defense for 1984, the filing of the partnership return, see <u>Amesbury Apartments, Ltd. v. Commissioner</u>, 95 T.C. 227, 240 (1990), and we must conclude that the AVA FPAA was issued before expiration of the section 6229(a) assessment period

with respect to the partnership's 1984 taxable year. See <u>supra</u> sec. III.B.1.a.

### 2. 1985 Taxable Year

#### a. Introduction

The partnership timely filed the AVA 1985 Form 1065 on April 14, 1986, and, unless the 3-year period was extended, the AVA FPAA, issued on April 10, 1991, was issued after the expiration of the 3-year period. Respondent relies on the AVA Form 872-P for 1985 to show such extension. AVA argues that the AVA Form 872-P for 1985 is invalid, primarily because (AVA argues) George L. Schreiber was not the TMP of the partnership at the time he executed that document. Whether Mr. Schreiber was then a TMP of the partnership turns on whether the September 30 letter, purporting to designate him the TMP of the partnership, is valid. AVA argues that it is not. We believe that the September 30 letter is valid and so find.

#### b. Code and Regulations

As stated <u>supra</u> in section II.A., section 6229(b)(1)(B) provides that the 3-year period may be extended with respect to all partners by an agreement entered into by respondent and the TMP.

In pertinent part, the term "tax matters partner" is defined in section 6231(a)(7)(A) as "the general partner designated as the tax matters partner as provided in regulations".

In pertinent part, section 301.6231(a)(7)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987), provides:  "A partnership may designate a partner as its tax matters partner for a specific taxable year only as provided in this section."

Section 301.6231(a)(7)-1T(b)(1), Temporary Proced. & Admin. Regs., supra, provides the following general requirement:

A person may be designated as the tax matters partners of a partnership for a taxable year only if that person --

(i) Was a general partner in the partnership at some time during the taxable year for which the designation is made, or

(ii) Is a general partner in the partnership as of the time the designation is made.

Section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., supra, provides:

Designation by general partners with majority interest. The partnership may designate a tax matters partner for a partnership taxable year at any time after the filing of a partnership return for that taxable year by filing a statement with the service center with which the partnership return was filed. The statement shall--

(1) Identify the partnership and the designated partner by name, address, and taxpayer identification number,

(2) Specify the partnership taxable year to which the designation relates,

(3) Declare that it is a designation of a tax matters partner for the taxable year specified, and

(4) Be signed by persons who were general partners at the close of the year and were shown on the return for that year to hold more than 50 percent of the aggregate interest in partnership profits held by all general partners as of the close of that taxable year. For purposes of this paragraph (e)(4), all limited partnership interests held by general partners shall be included in determining the aggregate interest in partnership profits held by such general partners.

c.  September 30 Letter Designates TMP

On September 30, 1988, George L. Schreiber was a general partner in the partnership; he was also a general partner during 1985.  By the September 30 letter, he is designated TMP of the partnership for 1985.  On brief, AVA concedes that the September 30 letter was properly signed by Mr. Schreiber and AMCOR and, together, Mr. Schreiber and AMCOR represented 67 percent "of the general partner profits interests".  Nevertheless, AVA argues that the September 30 letter was not effective to designate Mr. Schreiber the TMP of the partnership for 1985 because it fails to meet two of the requirements of section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., supra:  It does not identify the address of the partnership, and it was not filed with the Fresno, California, service center, where the AVA 1985 Form 1065 was filed.

Subparagraph (1) of section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., id., requires that the designated partner and the partnership be identified by name, address, and taxpayer identification number.  The September 30 letter designates George

L. Schreiber, a general partner in the partnership, as the TMP of the partnership for 1985 and shows his address as "5000 Birch Street, Suite 610, Newport Beach, California 92660".  The 1985 AVA Form 1065 shows the partnership's address as care of AMCOR, "5000 BIRCH ST., STE 610, EAST TOWER, NEWPORT BEACH CA 92660". AVA has failed to show that the partnership's address was any different on September 30, 1988, or that correspondence addressed to it care of George L. Schreiber, who also signed the September 30 letter as vice president of AMCOR, would not have reached the partnership.  We find that the partnership was identified by address in the September 30 letter.  Moreover, the September 30 letter was prepared by Deborah Gaither, a revenue agent employed by respondent who was examining various AMCOR-sponsored partnerships.  The circumstances surrounding her preparation of that letter and its signature by Messrs. Behrens and Schreiber convince us that there could have been no confusion as to what partnerships were the subject of that letter and that any technical inadequacy in that regard is immaterial.

The first sentence of section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., supra, specifies that the statement designating a TMP be filed with the service center with which the partnership return was filed.  AVA argues that its failure to file the September 30 letter with the service center is fatal to its validity.  Respondent argues that, since the

regulatory requirements in dispute are procedural and respondent was not prejudiced by the omissions, the Court may determine that the regulatory requirements have been fulfilled.

On numerous occasions we have discussed the necessity of literal compliance with the procedural requirements in Treasury regulations on making elections, such as "place of filing" requirements. See, e.g., Hewlett-Packard Co. v. Commissioner, 67 T.C. 736, 748 (1977), in which we said: "Repeatedly this Court has held elections effective where the taxpayer complied with the essential requirements of a regulation even though the taxpayer failed to comply with certain procedural directions therein." In Taylor v. Commissioner, 67 T.C. 1071, 1077 (1977), we said:

> The critical question to be answered is whether the requirements relate to the substance or essence of the statute. If so, strict adherence to all statutory and regulatory requirements is a precondition to an effective election. On the other hand, if the requirements are procedural or directory in that they are not the essence of the thing to be done but are given with a view to orderly conduct of business, they may be fulfilled by substantial, if not strict, compliance. [Internal quotation marks and citations omitted.]

We are not dealing here with an election, yet the situation is analogous, and the same considerations apply.

The service center filing specification is not required by the statutory provision providing for an extension by agreement of the 3-year period. See sec. 6229(b). We find that the filing

requirement of section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6778 (Mar. 5, 1987), was substantially complied with when the September 30 letter was received in hand by Deborah Gaither, respondent's revenue agent, and that all requirements of the regulation have been satisfied. The September 30 letter was effective to designate George L. Schreiber the TMP of the partnership.

### d. Timeliness of Designation

AVA argues that, even if the September 30 letter was effective to designate Mr. Schreiber as the TMP of the partnership, the September 30 letter was not filed by respondent before Mr. Schreiber signed the AVA Form 872-P for 1985, which was signed on September 30, 1988. It is true that the September 30 letter is stamped received, Laguna Niguel District, with a date of October 4, 1988. Nevertheless, we have found that the September 30 letter was received in hand by one of respondent's revenue agents on September 30, 1988, and such receipt substantially complied with section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6792 (Mar. 5, 1987). In pertinent part, section 301.6231(a)(7)-1T(k), Temporary Proced. & Admin. Regs., provides that a statement designating a TMP becomes effective on the day the statement is filed. Generally, the filing of a paper takes place upon the

delivery of it to an officer at his office. See <u>Miton v. United States</u>, 105 F.2d 253 (5th Cir. 1939) (containing an extensive summary of the meaning of the term "filing" and consequences thereof); cf. sec. 7502 (timely mailing is timely filing). Based on AVA's substantial compliance with section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., we find that the September 30 letter was filed on September 30, 1988. The September 30 letter was, therefore, effective on September 30, 1988, the day the AVA Form 872-P for 1985 was signed by Mr. Schreiber.

### e. AVA's Other Arguments

AVA argues, even if the AVA Form 872-P for 1985 was validly executed, Mr. Schreiber's consent to extend the section 6229(a) assessment period was a legal nullity because there never was a meeting of the minds between the parties. AVA avers: "Behrens, Schreiber and Wright were all unaware of respondent's criminal investigation of * * * [AMCOR] and themselves and would not have executed the Forms 872-P if they had that knowledge." We have described respondent's criminal investigation in <u>Crop Associates-1986, Frederick H. Behrens, Tax Matters Partner v. Commissioner</u>, T.C. Memo. 2000-216. AVA has failed to prove that Mr. Schreiber was unaware of the state of that investigation on September 30, 1988, or that, given that knowledge, he would have refused to sign the AVA Form 872-P for 1985.

AVA has failed to prove that, on September 30, 1988, when Mr. Schreiber signed the AVA Form 872-P for 1985, he had a conflict of interest with the limited partners such that he was prevented from acting as a representative of those limited partners. Compare Transpac Drilling Venture 1983-12 v. Commissioner, 147 F.3d 221, 227-228 (2d Cir. 1998) ("In sum, the criminal investigation created an overwhelming pressure on TMPs to ignore their fiduciary duties to the limited partners. As such, we cannot let them bind these partnerships"), revg. and remanding T.C. Memo. 1994-26 (fn. ref. omitted) with Phillips v. Commissioner, 114 T.C. 115 (2000) (distinguishing Transpac Drilling Venture on the grounds that, in Phillips (1) the limited partners had not refused to sign extensions, (2) the general partner had not been indicted or convicted of a tax felony and was not cooperating with the Government as a witness, and (3) the IRS had not misled partners about the existence of a criminal investigation or instructed the general partner to say nothing about it). This case is governed by Phillips and not Transpac Drilling Venture. AVA has not claimed that any limited partners refused to sign any consent. Also, as stated, AVA professes that, when Mr. Schreiber signed the AVA Form 872-P for 1985, he was unaware of any criminal investigation. Given that representation, it is unlikely that he was cooperating with the Government as a witness in a criminal investigation. Indeed, the

referral that resulted in a criminal investigation of AMCOR-related individuals did not occur until October 25, 1988, almost 1 month after he signed the AVA Form 872-P for 1985. See Crop Associates-1986 v. Commissioner, T.C. Memo. 2000-216. Also, in Crops Associates-1986, we did not find, as the petitioner therein requested, that the IRS misled the partners about the existence of a criminal investigation. Nor did we find that the IRS instructed the general partner to say nothing about such an investigation.

### f. Conclusion

We find that George L. Schreiber was the TMP of the partnership on September 30, 1988, the day he executed the AVA Form 872-P for 1985. The AVA Form 872-P was, thus, effective to extend the 3-year period for all of the partners of the partnership for 1985. The AVA FPAA was timely issued before expiration of the section 6229(a) assessment period with respect to the partnership's 1985 taxable year.

## IV. AVF

### A. FINDINGS OF FACT

AVF, a calendar-year taxpayer, is a California limited partnership formed in 1985 pursuant to the CRLPA.

For 1985, AVF timely made a return of income (the AVF 1985 Form 1065) to respondent's Fresno, California, service center. The AVF 1985 Form 1065 shows AVF's address as: C/O AMCOR, "5000

BIRCH ST., STE 610 EAST TOWER, NEWPORT BEACH, CA 92660". The AVF 1985 Form 1065 does not designate any partner as the TMP of AVF.

On September 30, 1988, Messrs. Behrens and Schreiber signed a letter (the second September 30 letter) with respect to AVF that, in pertinent part, is identical to the September 30 letter. See supra sec. III.A.5. The second September 30 letter was properly signed by Messrs. Behrens and Schreiber, who, together, represented 67 percent of the general partner's profit interests. The circumstances surrounding Messrs. Behrens and Schreiber's signing the second September 30 letter are identical to the circumstances surrounding their signing the September 30 letter.

On September 30, 1988, Mr. Schreiber executed a Form 872-P with respect to AVF (the AVF Form 872-P for 1985) that, except for the identification thereon of AVF, is identical to the AVA Form 872-P for 1985. See supra sec. III.A.6. The AVF Form 872-P for 1985 was executed by a representative of respondent's on October 4, 1988.

On April 10, 1991, respondent issued an FPAA to AVF, addressed to "Tax Matters Partner" (the AVF FPAA), for its 1985 taxable year.

B. OPINION

The issue here is the same as it is with respect to AVA for 1985, except that it is the validity of the second September 30

letter, and not the first, that is at issue. For the reasons set forth supra in section III.B.2, we find that the second September 30 letter is valid. Therefore, we find that George L. Schreiber was the TMP of AVF on September 30, 1988, the day he executed the AVF Form 872-P for 1985. The AVF Form 872-P for 1985 was, thus, effective to extend the 3-year period for all of the partners of the partnership for 1985. The AVF FPAA was timely issued.

V.  DV-85

A.  FINDINGS OF FACT

DV-85 (sometimes, the partnership), a calendar-year taxpayer, is a California limited partnership formed in 1985 pursuant to the CRLPA.

On June 28, 1985, Messrs. Behrens, Schreiber, and Wright, as general partners, and certain others entered into an agreement of limited partnership with respect to the partnership (the DV-85 limited partnership agreement or the agreement). The agreement contains provisions substantially identical to the provisions of the AVA limited partnership agreement set forth supra in section III.A.2.

For 1985, the partnership timely made a return of income (the DV-85 1985 Form 1065). The DV-85 1985 Form 1065 does not designate any partner as the TMP of DV-85.

Respondent received three letters with respect to the partnership, dated June 16, July 14, and September 30, 1988, respectively (the three letters). Each of the three letters states that, as referenced in the limited partnership agreement, the general partners have designated George L. Schreiber as TMP (the first two of the three letters say "until the Partnership termination", while the last says "for the 1985 tax year and until the Partnership termination"). The three letters are signed by Messrs. Behrens, Schreiber, and Wright in various capacities with respect to AMCOR or as a general partner of DV-85.

On June 17, 1988, Mr. Schreiber was a general partner of the partnership. On that date, he executed a Form 872-P with respect to the partnership (the DV-85 Form 872-P for 1985) that, except for the date and the identification thereon of DV-85, is identical to the AVA Form 872-P for 1985. The DV-85 Form 872-P for 1985 was executed by a representative of respondent's on June 23, 1988.

On April 10, 1991, respondent issued an FPAA to the partnership, addressed to "Tax Matters Partner" (the DV-85 FPAA), for its 1985 taxable year.

B. OPINION

1. Introduction

The partnership timely filed the DV-85 1985 Form 1065, and, unless the 3-year period was extended, the DV-85 FPAA, issued on

April 10, 1991, was issued after the expiration of the 3-year period. Respondent relies on the DV-85 Form 872-P for 1985 to show such extension. There are technical defects in each of the three letters, and respondent concedes that none of them complies with the requirements of section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987), for designating a TMP. Respondent also concedes that Mr. Schreiber was not the TMP of DV-85 at the time he executed the DV-85 Form 872-P for 1985. Nevertheless, respondent argues that the DV-85 Form 872-P for 1985 was effective to extend the 3-year period for all of the partners of the partnership since Mr. Schreiber was authorized by the partnership in writing to enter into an agreement with respondent to so extend the 3-year period. See sec. 6229(b)(1)(B). DV-85 argues that Mr. Schreiber was not so authorized. We believe that he was authorized in writing to enter into such agreement, and we so find.

### 2. Relevant Law

As stated *supra* in section II.A, section 6229(b)(1)(B) provides that the 3-year period may be extended with respect to all partners by an agreement entered into by respondent and, alternatively, (1) the tax matters partner or (2) any other person authorized by the partnership in writing to enter into such an agreement. Section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6784 (Mar. 5, 1987), Extension by agreement (Temporary), provides:

Any partnership may authorize any person to extend the period described in section 6229(a) with respect to all partners by filing a statement to that effect with the service center with which the partnership return is filed. The statement shall--

(a) Provide that it is an authorization for a person other than the tax matters partner to extend the assessment period with respect to all partners,

(b) Identify the partnership and the person being authorized by name, address, and taxpayer identification number,

(c) Specify the partnership taxable year or years for which the authorization is effective, and

(d) Be signed by all persons who were general partners at any time during the year or years for which the authorization is effective.

Respondent concedes that DV-85 filed no statement complying with section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., supra. Respondent argues that, nevertheless, Mr. Schreiber was authorized by DV-85 in writing to execute the DV-85 Form 872-P for 1985 and that such authorization satisfies section 6229(b)(1)(B).

Section 6229(b)(1)(B) does not specify how a person other than the TMP is to be authorized by the partnership in writing to enter into an agreement to extend the 3-year period. We have concluded that section 301.6229(b)-1T, Temporary Proced. and Admin. Regs., is permissive, not mandatory, in nature. See Bugaboo Timber Co. v. Commissioner, 101 T.C. 474, 487 (1993) (with respect to an S corporation, adopting the conclusions of Amesbury Apartments, Ltd., and Cambridge Research & Dev. Group,

that specificity of the written authorization is not required).

Cambridge Research & Dev. Group v. Commissioner, 97 T.C. 287, 295 (1991); Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. at 242-243. In Amesbury Apartments, Ltd. v. Commissioner, supra, we reasoned: "[T]he crucial word in temporary regulation section 301.6229(b)-1T is 'may,' not 'shall.' There is no mandatory requirement that a partnership give authority to a person to execute a consent utilizing specific procedures, such as those outlined in the temporary regulation." DV-85 contends that our reasoning in Amesbury Apartments, Ltd., and Cambridge Research & Dev. Group, is obiter dicta since the consents in both cases were signed before section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., supra, came into effect. In any case, we find our reasoning in those two cases to be persuasive, and follow it here. See Bugaboo Timber Co. v. Commissioner, supra at 488.

We may look to the DV-85 limited partnership agreement to determine whether Mr. Schreiber was authorized by the partnership in writing to enter into an agreement with respondent to extend the 3-year period; i.e., to execute the DV-85 Form 872-P for 1985. See Cambridge Research & Dev. Group v. Commissioner, supra at 301-302.

　　　3. Discussion

In Cambridge Research & Dev. Group, we found that language in the agreement of limited partnership there in question authorizing the general partners to "take any action or do

anything in furtherance of the Partnership business" amounted to a grant of agency from the partners to the general partners sufficient for a general partner to enter into an agreement with the Secretary to extend the 3-year period.  See supra at 297. Here, in pertinent part, the DV-85 limited partnership agreement provides:

11.1  'Management and Control of the Partnership"

11.1.a  Subject to the consent of the Limited Partners where required by this Agreement, the General Partners, with the authority granted under this Agreement, shall have the exclusive right to manage the business of the Partnership and are hereby authorized to take any action of any kind and to do anything and everything they deem necessary in accordance with the provisions of this Agreement.  In decisions by the General Partners, vote by a majority of them shall be determinative.

*    *    *    *    *    *    *

11.2  "Authority of the General Partners"

11.2.a  Except to the extent otherwise provided herein, the General Partners (or their designated agent) for, and in the name and on behalf of the Partnership, are hereby authorized:

*    *    *    *    *    *    *

(11)  to engage in any kind of activity and to perform and carry out contracts of any kind necessary to, or in connection with, or incidental to the accomplishment of the purposes of the Partnership, as may be lawfully carried on or performed by a partnership under the laws of each state in which the partnership is then formed or qualified.

There are no pertinent restrictions on the authority of the general partners, and, thus, sections 11.1.a, 11.2.a, and (11) of the DV-85 agreement provide a grant of agency at least as broad

as the grant made by the agreement in <u>Cambridge Research & Dev. Group v. Commissioner</u>, <u>supra</u>. Section 26.6 of the agreement (the same as sec. 26.6 of the AVA limited partnership agreement; see <u>supra</u> sec. III.A.2), providing that the general partners shall designate one of them TMP, confirms that drafters of the agreement contemplated that a general partner would have the authority to extend the 3-year period for all of the partners of the partnership. See sec. 6229(b)(1)(B). The fact that the general partners were not successful in designating one of themselves TMP, a position which carries responsibilities in addition to entering into an agreement with the Secretary to extend the 3-year period, does not convince us that the drafters of the agreement intended such extension to be accomplished only by a general partner successfully designated TMP. We believe that, when read in the light of the California Revised Limited Partnership Act, the DV-85 limited partnership provided the authority for a general partner of the partnership to enter into an agreement to extend the 3-year period with respect to all the partners of the partnership, and we so find. The DV-85 Form 872-P for 1985, executed by Mr. Schreiber and delivered to respondent, is evidence that Mr. Schreiber had authority to execute that document. See section 11.2.b of the DV-85 limited partnership agreement, which is identical to the same section of the AVA limited partnership agreement, set forth <u>supra</u> in section III.A.2. The partnership has failed to prove that

Mr. Schreiber's signature on the DV-85 Form 872-P for 1985 was not duly authorized by the general partners of DV-85.

DV-85 also makes the same arguments that we considered <u>supra</u> in section III.B.2.e., under the heading "<u>AVA's Other Arguments</u>". We reject those arguments with respect to DV-85 for the same reasons we rejected them with respect to AVA.

### 4. Conclusion

The DV-85 Form 872-P for 1985 was effective to extend the 3-year period for all of the partners of the partnership for 1985. The DV-85 FPAA was timely issued.

## VI. HFA-II

### A. FINDINGS OF FACT

HFA-II (sometimes, the partnership), a calendar-year taxpayer, is a Texas limited partnership formed in 1985 pursuant to the Texas Uniform Limited Partnership Act (sometimes, TULPA), Tex. Rev. Civ. Stat. Ann. art. 6132a (West 1970).[6]

On May 22, 1985, James D. Dannenbaum and Mr. Wright, as general partners, and certain others entered into an agreement of limited partnership with respect to the partnership (the HFA-II limited partnership agreement or the agreement). The agreement

---

[6] There is a conflict between Stipulation of Facts E-1, which recites that HFA-II was organized under the laws of California, and the HFA-II agreement of limited partnership, which recites that the partnership was formed under the laws of Texas. We may disregard a stipulation where it is clearly contrary to the evidence in the record, and we do so here. See <u>Jasionowski v. Commissioner</u>, 66 T.C. 312, 318 (1976).

contains provisions substantially identical to the provisions of the AVA limited partnership agreement set forth supra in section III.A.2.

For 1985, the partnership prepared a Form 1065 (the HFA-II 1985 Form 1065), which was received by respondent on March 24, 1986.  At the signature line on the HFA-II 1985 Form 1065 is what appears to be a stamped signature block reading as follows:

AMERICAN AGRICORP, Managing Agent

By _____

The signature of George Schreiber, "Sr VP", appears on the line in that block.  The HFA-II 1985 Form 1065 shows the date of Mr. Schreiber's signature as February 4, 1986.  The HFA-II 1985 Form 1065 does not designate any partner as TMP.

During 1985, AMCOR was not, at any time, a partner of HFA-II.  Mr. Schreiber was never either a general or limited partner of HFA-II.

On April 10, 1991, respondent issued an FPAA to the partnership, addressed to "Tax Matters Partner" (the HFA-II FPAA), for its 1985 taxable year.

B.  OPINION

1.  Introduction

The issue here is similar to the issue presented with respect to AVA for 1984, see supra section III.B.1. viz, whether the HFA-II 1985 Form 1065 is invalid because not executed in conformance with the Internal Revenue Code.  If invalid, then

HFA-II's affirmative defense of statute of limitations fails because the 3-year period had not run at the time respondent issued the HFA-II FPAA.  See sec. 6229(a), (c)(3).

### 2.  AMCOR Was Not a Partner

For the HFA-II 1985 Form 1065 to be a valid return, it must be signed by one of the partners of the partnership.  See sec. 6063.  The parties have stipulated:

> If * * * [AMCOR] is determined to have been a general partner for Federal income tax purposes when the * * *  [HFA-II 1985 Form 1065] was executed then such return is adequate to commence the running of the statute of limitations as of the later of the due date of the return or the date it was actually filed.

HFA-II has failed to propose a finding of fact that AMCOR was a partner of HFA-II by February 4, 1986, the date of Mr. Schreiber's signature appearing on the HFA-II 1985 Form 1065. The HFA-85 limited partnership agreement gives the general partners the authority to admit a co-general partner.  HFA-II has failed to produce any evidence that such authority was exercised on or before February 4, 1986.  As with AVA, see supra section III.B.1.d, HFA-II's failure to produce such evidence leads to the inference that either such evidence does not exist or would be negative to petitioner.  See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  We find that AMCOR was not admitted as a general partner of the partnership on or before February 4, 1986.

### 3. Agency

Alternatively, HFA-II argues: "In addition, * * * [AMCOR] was managing agent of HFA. As managing agent, * * * [AMCOR] was granted the responsibility for conducting all of HFA's business and tax affairs, and was authorized to sign the 1985 Form 1065 in that capacity." We reject that argument with respect to the HFA-II for the same reasons we reject it with respect to AVA. See supra sec. III.B.1.e.(2).

### 4. Authority of Limited Partner

As a second alternative, HFA-II argues: "The 1985 Form 1065 for HFA was executed by Schreiber, a general partner in AVF, which was a limited partner in HFA during 1985." Respondent concedes that AVF was a limited partner in HFA-II "for the 1985 year". HFA-II has failed to prove that Mr. Schreiber executed the HFA-II 1985 Form 1065 in any capacity other than as a vice-president of AMCOR. Even if we assume that he executed it as a limited partner of AVF, however, the HFA-II 1985 Form 1065 is still invalid.

Section 6063 provides that a partnership return shall be signed by any one of the partners. It further provides: "The fact that a partner's name is signed on the return shall be prima facie evidence that such partner is authorized to sign the return on behalf of the partnership." Prima facie evidence suffices to establish a fact until contradictory evidence is produced. See Black's Law Dictionary, 579 (7th ed. 1999). Section 9.4 of the

HFA-II limited partnership agreement is substantially identical to section 9.4 of the AVA limited partnership agreement set out supra in section III.A.2. In pertinent part, it provides that a limited partner "shall have no right or authority to act for or bind the Partnership." Mr. Schreiber, acting as a general partner in AVF, which was only a limited partner in HFA-II, had no authority to sign partnership returns on behalf of HFA-II. The HFA-II 1985 Form 1065 was not signed by a partner who had authority to bind the partnership.[7]

### 5. Conclusion

We find that the HFA-II 1985 Form 1065 was not signed by any partner who had authority to sign it and, consequently, it was not a valid partnership return. The HFA-II FPAA was issued before expiration of the section 6229(a) assessment period. See supra sec. III.B.1.f.

## VII. TFV

### A. FINDINGS OF FACT

#### 1. Formation of TFV

TFV (sometimes, the partnership) is a Texas limited partnership formed in 1984 pursuant to the TULPA.

#### 2. Agreement of Limited Partnership

On December 14, 1984, James D. Dannenbaum and Robert A. Wright, as general partners, and certain others entered into an

---

[7] We need not reach the broader issue anticipated by HFA-II, whether a partnership return that is signed by a limited partner can ever be properly executed under sec. 6063, since the limited partner in this case lacked authority to execute the HFA-II 1985 Form 1065.

agreement of limited partnership with respect to the partnership (the TFV limited partnership agreement or the agreement). The agreement contains provisions substantially identical to the provisions of the AVA limited partnership agreement set forth supra in section III.A.2.

        3.  Agreement To Make AMCOR Co-General Partner

Following are the pertinent portions of a document (the TFV purchase document) dealing with the purchase of a general partnership interest in the partnership:

AMERICAN AGRI-CORP

December 12, 1985

Mr. Robert A. Wright
Mr. James D. Dannenbaum [sic]
AMERICAN AGRI-CORP
5000 Birch Street
East Tower, Suite 610
Newport Beach, CA 92660

SUBJECT:  PURCHASES OF A GENERAL PARTNERSHIP
           INTEREST IN TEXAS FARM VENTURERS-84

Gentlemen:

You are Co-General Partners of Texas Farm Venturers-84, a Texas limited partnership.

It is understood that the two of you, as individuals, collectively own a 1 percent interest in this partnership.

American Agri-Corp is desirous of purchasing 50 percent of the collective position of Robert A. Wright's General Partnership interest in Texas Farm Venturers-84.

American Agri-Corp agrees to buy, and you agree to sell, a one-quarter percent interest in the above general partnership interest for consideration as agreed upon between the name parties. It is understood that American Agri-Corp assumes all the rights, duties,

and obligations of a Co-General Partner in the above named partnerships.

Sincerely,                    UNDERSTOOD AND AGREED TO:

American Agri-Corp            By:

_____/s/_____            _____/s/_____
Fred H. Behrens              Robert A. Wright
Chairman

_____/s/_____            _____/s/_____
George L. Schreiber          James D. Dannenbaum
Vice Chairman

_____/s/_____
Robert A. Wright
Senior Vice President


###### 4.  Partnership Returns

For tax purposes, the partnership makes its return on the basis of a calendar year.  For 1984 and 1985, the partnership prepared Forms 1065, U.S. Partnership Return of Income (the TFV 1984 and 1985 Forms 1065, respectively).  Respondent received the TFV 1984 Form 1065 at his Fresno, California, service center on March 25, 1985, and the TFV 1985 Form 1065 at his Austin, Texas, service center on April 11, 1986.  Each of such returns shows TFV's address as:  C/O AMCOR, "5000 BIRCH ST., STE 610 EAST TOWER, NEWPORT BEACH, CA 92660".  The TFV 1984 Form 1065 is signed "Joseph O. Voyer Treasurer".  It shows the date of that signature as February 5, 1985.  It does not state the organization, if any, of which Joseph O. Voyer was treasurer.  TFV never had a treasurer; Mr. Voyer was never a partner of TFV.  Mr. Voyer was an officer and employee of AMCOR.

The TFV 1985 Form 1065 does not designate any partner as the TMP of TFV.

### 5. Designation of TMP

Respondent received two letters with respect to the partnership, dated June 16, and September 29, 1988, respectively (the June 16 and the September 29 letters, respectively). The June 16 letter states that, as referenced in the limited partnership agreement, the general partners have designated George L. Schreiber as TMP until the partnership termination. The June 16 letter is signed by Messrs. Behrens, Wright, and Schreiber, in various capacities with respect to AMCOR, in Mr. White's case, or as a general partner of TFV. The September 29 letter is similar, except that it designates Robert A. Wright as TMP for 1985 and until the partnership termination, and it is signed only by Robert A. Wright, "General Partner".

### 6. Consents

On June 17, 1988, Mr. Schreiber executed a Form 872-P with respect to TFV (the June 17 TFV Form 872-P for 1985) that, except for the identification thereon of TFV, is identical to the AVA Form 872-P for 1985. The June 17, 1988, Form 872-P for 1985 was executed by a representative of respondent's on June 23, 1988. On September 29, 1988, Mr. Wright executed a second Form 872-P with respect to TFV (the September 29 TFV Form 872-P for 1985)

that, except for the identification thereon of TFV, is identical to the AVA Form 872-P for 1985. The September 29, 1988, Form 872-P for 1985 was executed by a representative of respondent's on October 5, 1988.

### 7. TFV FPAA

On April 10, 1991, respondent issued an FPAA to TFV, addressed to "Tax Matters Partner" (the TFV FPAA), for its 1984 and 1985 taxable years.

### B. OPINION

#### 1. 1984 Taxable Year

The issue here is the same as it is with respect to AVA for 1984. See supra sec. III.B.1.a. The parties have stipulated: On February 5, 1985, when Mr. Voyer signed the 1984 TFV Form 1065, he was an officer and employee of AMCOR; if AMCOR is determined to have been a general partner of TFV for Federal income tax purposes when the TFV 1984 Form 1065 was signed by Mr. Voyer, then such return is valid. We must, thus, determine whether AMCOR was a partner of TFV on February 5, 1985.

TFV makes essentially the same arguments made by AVA. It does not, however, argue that, by way of stipulation, respondent has admitted that AMCOR was a general partner in TFV throughout 1985. The relevant statutory provision is TULPA section 10(5), which, in pertinent part, provides: "[W]ithout the written consent or ratification of the specific act by all the limited partners, a general partner or all the general partners have no authority to: * * * Admit a person as a general partner."

Tex. Rev. Civ. Stat. Ann. art. 6132a (West 1970).  TFV has failed to prove that AMCOR was admitted as a co-general partner of the partnership in accordance with TULPA section 10(5) on or before February 5, 1985.  We reject TFV's other arguments for the reasons set forth supra in section III.B.1.e.(1) and (2).[8]

We find that the TFV 1984 Form 1065 was not signed by any partner who had authority to sign it, and, consequently, it was not a valid partnership return.  The TFV FPAA was issued before expiration of the section 6229(a) assessment period and was effective to suspend the running of that period.  See supra sec. III.B.1.f.

### 2.  1985 Taxable Year

The issue here is the same as it is with respect to DV-85 for 1985.  See supra sec. V.B.  The partnership timely filed the TFV 1985 Form 1065, and, unless the 3-year period was extended, the TFV FPAA, issued on April 10, 1991, was issued after the expiration of the 3-year period.  Respondent relies on the September 29 TFV Form 872-P for 1985 to show such extension. There are technical defects in the June 16 and September 29 letters, and respondent concedes that neither of them complies with the requirements of section 301.6231(a)(7)-1T(e), Temporary Proced. & Admin. Regs., 42 Fed. Reg. 6791 (Mar. 5, 1987), for designating a TMP.  Also, respondent concedes that Mr. Schreiber,

---

[8]  TFV has not produced any agreement by which AMCOR was engaged as managing partner of the partnership.

who signed the June 17 TFV Form 872-P for 1985 was never a partner of TFV. Nevertheless, respondent argues that the September 29 TFV Form 872-P for 1985 was effective to extend the 3-year period for all of the partners of the partnership since Mr. Wright was authorized by the partnership in writing to enter into an agreement with respondent to so extend the 3-year period. See sec. 6229(b)(1)(B).

For the same reasons set forth supra in section V.B.3., we find that the September 29 TFV Form 872-P for 1985 was effective to extend the 3-year period for 1985. The TFV FPAA was timely issued.

VIII. Conclusion

None of the partnerships has sustained the affirmative defense of statute of limitations; the FPAA's issued to AVA and TFV for the 1984 and 1985 taxable years are valid. The FPAA's issued to AVF, DV-85, and HFA-II for the 1985 taxable year are valid.

In the partnerships' reply brief, they state that respondent's opening brief identifies William K. Shipley as Acting Regional Counsel and Mr. Shipley was a witness in this case. The partnerships claim: "Any direct involvement by Mr. Shipley in a case in which he testified would be

inappropriate and unethical." Mr. Shipley is not among the counsel of record for respondent, nor have the partnerships shown his direct involvement in this case. The partnerships have made no claim that requires any action of us. See Rule 24(g).

<u>An appropriate order</u>

<u>will be issued</u>.