**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 5, 2013

No. 12-40483

Lyle W. Cayce
Clerk

KENNETH A. KERCHER; SUZANNE B. KERCHER,

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CV-310

_____

Cons w/ 12-20359

ALFONSO VARELA; SANDRA SANTA MARIA VARELA,

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-343

No. 12-40483

Before SMITH, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This appeal consolidates two cases from two district courts raising the same issues relating to federal taxation of partnerships. Kenneth and Suzanne Kercher and Alfonso and Sandra Santa Maria Varela (collectively "Taxpayers") seek refunds of taxes and interest paid as a result of Internal Revenue Service ("IRS") and Tax Court determinations that their partnerships' reported losses were not allowable deductions. These cases raise similar issues as *Irvine v. United States*, No. 12-20523, heard by this panel on the same day and argued by the same counsel. Our resolution of these consolidated cases depends heavily on the opinion we simultaneously issue in *Irvine. See Irvine v. United States*, No. 12-20523, slip op. (5th Cir. September 5, 2013). As in *Irvine,* Taxpayers here assert that the IRS's assessment of additional taxes fell outside the applicable statute of limitations and that the IRS erroneously applied penalty interest. We hold that the district courts lacked jurisdiction over both the statute of limitations claims and the penalty interest claims. The Kerchers separately assert that their 1985 assessment was invalid as a mere estimate of liability; we hold that this claim was not timely filed.

## I. Factual and Procedural Background

The Kerchers and Varelas are two more of the many individuals with tax cases relating to American Agri-Corp ("AMCOR") partnerships in the 1980s. Alfonso Varela invested as a limited partner in Agri-Venture II in 1984 and 1985, and in Coachella-85 in 1985. Kenneth Kercher invested as a limited

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40483

partner in Coachella-85 in 1985.[1]  In broad terms, these AMCOR agricultural partnerships allowed partners to report significant losses on tax returns, because "farming expenses typically exceeded any income realized from the farming activities." *Duffie v. United States*, 600 F.3d 362, 367 (5th Cir. 2010). The IRS began an investigation into AMCOR partnerships in the late 1980s "to determine whether they were impermissible tax shelters." *Id.*

In 1991, the IRS issued a Notice of Final Partnership Administrative Adjustments ("FPAA") to Agri-Venture II for its 1984 and 1985 returns and to Coachella-85 for its 1985 return, proposing to disallow all of the partnerships' reported farming expenses.  Individual partners from both Agri-Venture II and Coachella-85 filed partnership-level suits contesting the FPAAs in the Tax Court.  The complaining partners asserted, among other things, that the IRS could not assess additional taxes because the time period for assessment had expired.  The tax matters partner for each partnership subsequently intervened in the suits.  In 1999, the Agri-Venture II and Coachella-85 parties agreed to be bound by a test case, which was consolidated with others and decided as *Agri-Cal Venture Associates v. Commissioner*, 80 T.C.M. (CCH) 295, 2000 WL 1211147 (T.C. 2000).  The Tax Court found that the IRS's adjustments to the relevant partnerships were timely because 26 U.S.C. § 6229 allowed for extensions of the assessment periods. *Id.* at *15, *16.  After this decision, the Agri-Venture II and Coachella-85 parties filed a Joint Status Report, stating that they had reached grounds for  settlement of the partnership items, contingent on entry of stipulated decisions.  The IRS subsequently moved to have stipulated decisions entered.  On July 19, 2001, the Tax Court entered the

---

[1] Although Suzanne Kercher and Sandra Santa Maria Varela were not partners in the AMCOR partnerships, each of them filed a joint tax return with their husbands for each of the relevant tax years, thus becoming jointly and severally liable for the tax reportable on those returns. *See* 26 U.S.C. § 6013(d)(3).

3

decisions for both the Agri-Venture II and Coachella-85 partnership-level cases. The decisions adjusted downward the amount of farming expenses that the partnerships could claim. As a result of the Tax Court's adjustments at the partnership-level, the IRS assessed additional tax and interest against the Kerchers and the Varelas. The IRS assessed $13,895 of unpaid tax and $74,914 in interest against the Varelas for 1984 and $26,016 of unpaid tax and $121,558.88 in interest for 1985. The IRS assessed $41,683 in additional tax and $195,538.36 in interest against the Kerchers for 1985. The interest included penalty interest under 26 U.S.C § 6221(c), which provided for interest at 120% the statutory rate on "substantial underpayments attributable to tax-motivated transactions." 26 U.S.C. § 6621(c) (1986).[2] The Kerchers and the Varelas paid the additional assessments in full and filed administrative refund claims with the IRS. After their claims were denied, the Varelas filed a refund suit in the Southern District of Texas and the Kerchers filed a refund suit in the Eastern District of Texas.

As in *Irvine,* Taxpayers assert two claims in their respective refund actions: (1) the IRS assessed the additional taxes and interest outside the applicable 26 U.S.C. § 6501 statute of limitations ("the statute of limitations claims"); and (2) the IRS erroneously assessed § 6621(c) penalty interest against them ("the penalty interest claims"). The Kerchers separately assert that their 1985 assessment was invalid. Taxpayers and the government cross-moved for summary judgment in the respective district courts on all claims. Both district courts held that they lacked jurisdiction over the statute of limitations claims under 26 U.S.C. § 7422(h). On the penalty interest claims, the district court in the Kercher's case declined to even inquire whether the Tax Court had made any tax-motivated transaction determination, citing § 7422(h) as a jurisdictional bar.

---

[2] Section 6621(c) was repealed in 1989 but applies to the tax years in question. *See Weiner v. United States,* 389 F.3d 152, 159 (5th Cir. 2004).

No. 12-40483

The district court in the Varela's case also held that it lacked jurisdiction under § 7422(h) but based on different reasoning. It held that the Tax Court stipulated decisions included findings that the partnerships' transactions were tax-motivated and § 7422(h) barred it from revisiting those determinations. The district court in the Kercher's case also granted summary judgment to the government on the Kercher's claim that the IRS erred in its calculation of 1985 tax owed because the claim was not timely filed. All Taxpayers timely appealed.

## II. Discussion

This court reviews a district court's grant of summary judgment de novo and considers the same criteria that the district court relied upon when deciding the motion. *Weiner*, 389 F.3d at 155-56 (citing *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court also reviews a district court's determination of subject matter jurisdiction de novo. *Calhoun County, Tex. v. United States*, 132 F.3d 1100, 1103 (5th Cir. 1998). The parties do not assert that there are any disputed material facts on appeal.

This case, like *Irvine*, is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), generally codified at 26 U.S.C. §§ 6221-6233. *See generally Weiner*, 389 F.3d at 154-55 (describing TEFRA's provisions). The relevant statutory background of TEFRA is laid out fully in Part II of our *Irvine* opinion. *See Irvine*, slip op. at 5-6.

### A.     Statute of Limitations Claims

Taxpayers' claims that the IRS assessed the additional taxes outside the statute of limitations provided by 26 U.S.C § 6501(a) is identical to the statute of limitations claim in *Irvine*. For the reasons given in Part III.A of our *Irvine* opinion, we hold that, where both are asserted, the § 6501 limitations period

5

applicable to an individual partner cannot be determined without reference to the asserted bases for extensions under 26 U.S.C § 6229, which is a partnership item. *See Irvine*, slip op. at 7-11. Thus, the district courts lacked jurisdiction over the statute of limitations claims under § 7422(h). *Id.* We affirm the grant of summary judgment to the government on these claims.

### B.     Penalty Interest Claims

Taxpayers next assert that penalty interest was erroneously assessed for 1985.[3] They raise three issues relating to their penalty interest claims: (1) that there was no tax-motivated transaction determination as required to assess penalty interest; (2) that if there was such a determination, they are not bound by it; or (3) that the Tax Court found multiple bases for disallowing the farming deductions and so this court cannot conclude that the underpayment was attributable to a tax-motivated transaction. The government contends that this court lacks jurisdiction, either because the claims for refund are attributable to partnership items under § 7422(h) or because Taxpayers failed to file a timely refund claim under 26 U.S.C. § 6230(c).

Penalty interest is an affected item, made up of both partnership and non-partnership components. *See Duffie*, 600 F.3d at 378. The partnership component is whether the partnership's transactions were tax motivated. *See id.* A claim for refund based on a partnership component of § 6621(c) interest is jurisdictionally barred under § 7422(h).

As in *Irvine*, we first make it clear that we do have jurisdiction to determine whether there was a tax-motivated transaction determination in the partnership-level proceedings. *See Irvine*, slip op. at 12-13.

On the merits, however, these cases are factually and legally indistinguishable from *Duffie*, in which this court held that there was a tax-

---

[3] The Varelas have abandoned their penalty interest claim related to 1984.

motivated transaction determination entered in the Tax Court stipulated decisions, that unsettled partners were bound by it, and that it could not be revisited in the partner-level proceedings. *Duffie*, 600 F.3d at 368-69, 378-79. 383.   In *Duffie*, the taxpayers similarly argued that the language of the stipulated decisions was insufficient to constitute a determination that the partnership transactions were tax-motivated.  *Id.* at 373.  The language in the *Duffie* stipulated decisions stated:

> [t]hat the adjustments to partnership income and expense for the taxable year 1984 are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting.

*Id.* at 369.  Here, the language of the Tax Court stipulated decisions in the Agri-Venture and Coachella-85 cases is substantially identical to the language that the *Duffie* court found to constitute a tax-motivated transaction determination. *See id.* at 369, 373, 378-79, 383.  Under the clear holding of *Duffie*, the Tax Court decisions include determinations that the partnerships' transactions were tax-motivated.

Contrary to Taxpayers' additional arguments, this determination clearly binds them pursuant to 26 U.S.C. § 6226(c).  Section 6226 makes even non-participating partners parties to the partnership-level litigation.  *See id.* at 367 (citing § 6226(c)(1)).  Further, both the  Joint Status Report filed in the Tax Court summarizing the parties' settlement terms and the IRS's subsequent motion for entry of the stipulated decisions provided that the partners who qualify under § 6226(d)—i.e. those partners who had not individually settled and those whose assessment period remained open, *see* § 6226(d)—were parties to the proceeding and would be assessed additional taxes as required by the adjustments to the partnership items.  Similarly, even if Taxpayers are correct

No. 12-40483

that, despite § 6226, a separate *res judicata* analysis is required in order to bind partners to a partnership-level determination, the Taxpayers' claims and the resulting analysis is indistinguishable from those in *Duffie*. 600 F.3d 372-82. *Duffie* clearly holds that unsettled partners, like the Taxpayers here, are bound by the partnership-level determinations in the Tax Court, including the determinations that the partnerships' transactions were tax-motivated. *See id.* at 382, 383-84.

Taxpayers next argue that even if binding, the Tax Court's decision does not support a penalty interest assessment because the references to lack of economic substance and substantial distortion of income are two separate reasons for disallowing the partnership item. They point to *Weiner*, where this court held that several independent reasons listed in an FPAA, some of which were tax-motivated transaction determinations and some of which were not, meant that the partners' underpayment could not be attributable to a tax-motivated transaction as a matter of law. *Weiner*, 389 F.3d at 162-63. Here, however, under the reasoning of *Duffie,* both lack of economic substance and substantial distortion of income are independent tax-motivated transaction determinations. *See Duffie*, 600 F.3d at 373 (citing *Nault v. United States*, 517 F.3d 2, 5 (1st Cir. 2008); *Kimball v. Comm'r of Internal Revenue*, 95 T.C.M. (CCH) 1306, 2008 WL 862339 (T.C. 2008)); *id.* at 378.

This is a different outcome than in *Irvine*, because the taxpayers in *Irvine* settled individually with the IRS and were no longer parties to the Tax Court partnership-level proceedings at the time of the stipulated decisions and were instead bound by their individual settlements. *See Irvine*, slip op. at 3-4, 16. Taxpayers here, however, are bound by the partnership-level stipulated decisions entered in the Tax Court. We therefore conclude that under *Duffie*, the Tax Court decisions included findings that the partnerships' transactions were tax-motivated as required to impose § 6621(c) interest, the Taxpayers are bound

No. 12-40483

by those decisions, and the district courts lacked jurisdiction to revisit those partnership-level determinations under § 7422(h). We therefore affirm the grant of summary judgment to the government on the penalty interest claims.

### C.     The Kerchers' Amended Return

Lastly, the Kerchers argue that their assessment notice for 1985 was invalid because it merely estimated their tax liability, or because the IRS failed to follow the proper assessment procedures by assessing via notice of computational adjustment rather than by issuing a deficiency notice. This issue arose because the Kerchers claim they filed an amended 1985 return, of which neither they nor the IRS have a complete record. Eventually, the Kerchers located the first page of the amended return, which showed a $185 increase in tax. The IRS worked backwards from the $185 adjustment to determine what the income should have been for 1985 in order to compute the additional assessment after the partnership-level proceedings. Without a complete amended return, the Kerchers argue that the information used to compute their additional tax liability was insufficient. The district court found that it lacked jurisdiction over this claim because the Kerchers' claim for refund was not timely filed. We agree.

On appeal, the Kerchers contend: (1) that the adjustment was substantive and not computational and thus regular refund procedures apply, including a two-year statute of limitations, rather than the six-month period relied on by the district court; and (2) that even if the six-month period applies, the notice they received was insufficient to trigger the running of the limitations period.

The regular deadline for filing a refund claim is two years from the date of payment or three years from the date of filing of a tax return, whichever is later. 26 U.S.C. § 6511(a); *see Duffie*, 600 F.3d at 385. However, the six-month limitations period found in 26 U.S.C § 6230 applies where the adjustment is merely computational. *See Irvine,* slip op. at 14-15 (discussing computational

versus substantive adjustments); *Duffie*, 600 F.3d at 385. The Kerchers primarily dispute how the 1985 assessment was calculated, though they do not assert what the correct computation should be. On these facts, we conclude that the adjustment was computational, rather than substantive, and thus the procedures of 26 U.S.C. § 6230 govern the refund claim.

We further find that the notice of computational adjustment mailed to the Kerchers was sufficient to trigger the running of the limitations period. Because the adjustment was not substantive, the IRS was not required to send a notice of deficiency. *See Duffie*, 600 F.3d at 385. The notice of computational adjustment sent to the Kerchers informed them of the additional amount of tax assessed and that penalty interest would be assessed. Even though the notice included one form which showed "0.00" for the amount of penalty interest, the computation of additional taxes, together with the statement that interest would be computed at the enhanced rate provided for by § 6621(c), constituted adequate notice to the Kerchers. In any event, as the analysis in *Duffie* implies, the Kerchers had adequate notice of the additional taxes, including penalty interest, at least by the time they paid those taxes and interest in full. *See id.* at 386. Thus, the six-month period began to run by October 2004 at the latest, when the Kerchers paid the additional assessment. They did not file their refund claim until May 18, 2005, which was more than six months later. We therefore affirm the district court's grant of summary judgment to the government on this claim.

### III. Conclusion

For the foregoing reasons, we AFFIRM the grant of summary judgment to the government on all claims.