# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 5, 2013

No. 12-20523

Lyle W. Cayce
Clerk

JOHN A. IRVINE; LYNDA IRVINE; KENNETH L. KRAEMER; BILLY J.
WHITE; INA J. WHITE,

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, HAYNES, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Billy and Ina White, John and Lynda Irvine, and Kenneth Kraemer[1]
(collectively "Taxpayers") assert that the Internal Revenue Service ("IRS")
erroneously assessed additional taxes and interest against them in connection
with their investments in various partnerships in the 1980s. Taxpayers seek
refunds of the federal income taxes and penalty interest paid. Taxpayers assert
that the IRS's assessment of additional taxes fell outside the applicable statute
of limitations and that the IRS erroneously applied penalty interest. We hold

---

[1] Kraemer's last name is spelled differently in different documents in this litigation.
It is spelled as "Kraemer" in the case caption and in the original complaint, and as "Kramer"
in Appellants' briefing. In this opinion, we adopt the spelling in the case caption.

No. 12-20523

that the district court lacked jurisdiction over the statute of limitations claims but did have jurisdiction over the penalty interest claims and that penalty interest was erroneously assessed.

## I. Factual and Procedural Background

This tax refund suit is one among several arising from a series of limited partnerships managed by American Agri-Corp ("AMCOR") in the 1980s. In an earlier AMCOR-related case, we explained the background:

> In the early 1980s, AMCOR organized a number of limited partnerships for which it acted as general partner. These partnerships had as stated goals acquiring agricultural land, investing in agricultural ventures, and growing crops. AMCOR solicited investments from high income professionals across the country. Each partner in an AMCOR partnership would receive a projected tax loss from crops planted in the first year of roughly twice that partner's investment. Investors paid the farming expenses up front and deducted the amount invested on their tax returns. The next year, when the crops were harvested, the amount of loss in excess of the amount invested would be subject to taxes. However, the farming expenses typically exceeded any income realized from the farming activities. In 1987, the IRS began an investigation and audit into the AMCOR partnerships to determine whether they were impermissible tax shelters.

*Duffie v. United States*, 600 F.3d 362, 367 (5th Cir. 2010) (footnote omitted); *see also Weiner v. United States*, 389 F.3d 152, 153 (5th Cir. 2004) (describing similar AMCOR partnerships).

These Taxpayers were partners in AMCOR limited partnerships in the 1980s. Billy White invested as a limited partner in Texas Farm Venturers in 1984 and in Houston Farm Associates-II in 1985. John Irvine invested as a limited partner in Agri-Venture Fund in 1985.[2] Kenneth Kraemer invested as

---

[2] Although Lynda Irvine and Ina White were not partners in the AMCOR partnerships, each of them filed a joint tax return with their husbands for each of the relevant tax years, thus becoming jointly and severally liable for the tax reportable on those returns. *See* 26 U.S.C. § 6013(d)(3).

No. 12-20523

a limited partner in Rancho California Partners II in 1986. All Taxpayers reported their proportionate share of their respective partnerships' losses in the relevant tax years.

In 1990 and 1991, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") for the relevant tax years to the tax matters partners ("TMP")[3] of each of the partnerships. The FPAAs disallowed 100% of each partnership's farming expenses and other deductions. The FPAAs listed several reasons for disallowing the partnerships' deductions, including, *inter alia*, IRS determinations that the partnerships engaged in a series of sham transactions, that the partnerships' activities lacked economic substance, that the partnerships did not actually engage in farming activities, and that the partnerships had not substantiated their expenses. The TMPs for the partnerships did not challenge the FPAAs but other partners filed Tax Court suits contesting each FPAA, including claiming that the FPAAs were untimely. All partners initially became parties to the partnership-level suits. *See* 26 U.S.C. § 6226(c). These Tax Court suits were eventually consolidated with other similar AMCOR-partnership cases and the Tax Court issued a decision determining that each FPAA issued to the partnerships was timely pursuant to 26 U.S.C. § 6229. *See Agri-Cal Venture Associates v. Commissioner*, 80 T.C.M. (CCH) 295, 2000 WL 1211147, at *16, *20, *22 (T.C. 2000). In July 2001, a settled stipulated decision was entered in each Tax Court suit.

In 1999 and 2000, during the pendency of the Tax Court suits and before the partnership-level stipulated settlements, the Whites, the Irvines and Kraemer individually settled with the IRS. The settlement agreements disallowed only a portion of the farming deductions, as opposed to 100%

---

[3] "A tax matters partner is the partner designated to act as a liaison between the partnership and the IRS in administrative proceedings and as the representative of the partnership in judicial proceedings." *Duffie*, 600 F.3d at 366 n.1.

disallowance. After accepting Taxpayers' settlements, the IRS assessed additional tax liability against each Taxpayer, including penalty interest under § 6621(c). Section 6621(c) imposed an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions." 26 U.S.C. § 6621(c) (1986).[4] The IRS assessed additional tax of $14,397 and interest of $60,087.69 for the Whites' 1984 tax year, and additional tax of $16,812 and interest of $59,295.34 for the Whites' 1985 tax year. The Whites paid the additional taxes in February 2000 and filed an administrative claim for refund on February 12, 2002. The IRS assessed additional tax of $14,159 and interest of $52,459.64 for the Irvines' 1985 tax year. The Irvines paid the additional taxes beginning in May 2000 and filed an administrative claim for refund on May 7, 2002. The IRS assessed additional tax of $9,817 and interest of $31,292.40 for Kraemer's 1986 tax year. In February 2001, the IRS applied a previous deposit paid by Kraemer and issued Kraemer a refund; Kraemer filed an administrative claim for refund on February 11, 2003. The IRS did not act on any of Taxpayers' claims for refund. In August 2008, Taxpayers filed this suit for refund of the taxes and interest.

In their refund actions, the Whites and Irvines claimed that the additional taxes had been assessed after the statute of limitations for making such assessments had expired ("the statute of limitations claim"), and all Taxpayers claimed that the interest should not have been computed at the enhanced § 6621(c) penalty rate ("the penalty interest claim"). Taxpayers and the government moved for summary judgment. The district court granted summary judgment to the government on both claims, concluding that it lacked jurisdiction to consider the statute of limitations claim and that Taxpayers'

---

[4] Section 6621(c) was repealed in 1989 but applies to the tax years in question. *See Weiner,* 389 F.3d at 159.

claims for refund of penalty interest were untimely.    Taxpayers timely appealed.

## II. Statutory Background

This case is governed by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), generally codified at 26 U.S.C. §§ 6221-6233. *See generally Weiner*, 389 F.3d at 154-55 (describing TEFRA's provisions).  TEFRA requires partnerships to file informational returns reflecting the partnership's income, gains, deductions, and credits. *Id.* at 154. Individual partners then report their proportionate share of the items on their own tax returns. *Id.* "TEFRA requires the treatment of all partnership items to be determined at the partnership level." *Id.* (citing 26 U.S.C. § 6221).  "After TEFRA, the IRS could adjust partnership items at a singular proceeding, and then subsequently assess all of the partners based upon the adjustment to that particular item." *Duffie*, 600 F.3d at 365  (quotations omitted). "While TEFRA defines a 'partnership item' in technical terms, the provision generally encompasses items 'more appropriately determined at the partnership level than at the partner level.'" *Weiner*, 389 F.3d at 154 (quoting § 6231(a)(3)). IRS regulations further clarify that "partnership item" includes "the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." 26 C.F.R. § 301.6231(a)(3)-1(b).  A "nonpartnership item," conversely, is an item that is not treated as a partnership item. 26 U.S.C. § 6231(a)(4).  "The tax treatment of nonpartnership items requires partner-specific determinations that must be made at the individual partner level." *Duffie,* 600 F.3d at 366. TEFRA also includes a third category of "affected items."  An "affected item" is "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5); *Duffie*, 600 F.3d at 366. "Affected items can have both

partnership-item and nonpartnership-item components." *Duffie*, 600 F.3d at 366.

If the IRS adjusts any partnership items on a partnership's informational income tax return, it must notify the individual partners by issuing an FPAA. 26 U.S.C. § 6223; *see Duffie*, 600 F.3d at 366. The partners have the right to challenge the FPAA in a partnership-level proceeding in the Tax Court, district court, or the Court of Federal Claims, according to specified procedures. 26 U.S.C § 6226(a), (b); *see Duffie*, 600 F.3d at 366. In a partnership-level proceeding, the court has jurisdiction to determine all partnership items for the tax year to which the FPAA relates, including the allocation of those items among the partners and the applicability of any penalty. 26 U.S.C. § 6226(f); *see Duffie*, 600 F.3d at 367. If a partner individually settles his or her partnership tax liability with the IRS, "the partner will no longer be able to participate in the partnership level litigation, and will be bound instead by the terms of the settlement agreement." *Weiner,* 389 F.3d at 155.

District courts generally have subject matter jurisdiction over an individual partner's refund claim. 28 U.S.C. §§ 1340, 1346(a)(1); *Weiner*, 389 F.3d at 155. TEFRA, however, deprives refund courts of jurisdiction over claims "brought for a refund attributable to partnership items," with limited exceptions. 26 U.S.C. § 7422(h). However, "a court does have jurisdiction in a partner-level refund action over partnership items that were converted to nonpartnership items through a settlement with the IRS." *Duffie*, 600 F.3d at 367 (citing 26 U.S.C. § 6231(b)(1)(C)).

Against this statutory backdrop, we turn to the specific claims at issue.

No. 12-20523

## III.  Discussion

This court reviews a district court's grant of summary judgment de novo and considers the same criteria that the district court relied upon when deciding the motion. *Weiner*, 389 F.3d at 155-56 (citing *Mongrue v. Monsanto Co.*, 249 F.3d 422, 428 (5th Cir. 2001)).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  This court also reviews a district court's determination of subject matter jurisdiction de novo. *Calhoun County, Tex. v. United States*, 132 F.3d 1100, 1103 (5th Cir. 1998). The parties do not assert that there are any disputed material facts on appeal.

### A.     *The Statute of Limitations Claim*

The Whites and the Irvines first assert that the taxes and interest must be refunded because they were assessed by the IRS after the 26 U.S.C. §6501(a) statute of limitations had passed.  Section 6501(a) is "the three-year statute of limitations which is generally applicable to the Commissioner's assessment of tax." *Curr-Spec Partners, L.P. v. Comm'r of Internal Revenue*, 579 F.3d 391, 395 (5th Cir. 2009).  Taxpayers argue that the IRS had no authority to assess additional tax and interest against them in 1999 and 2000 because the § 6501(a) statute of limitations had run for the relevant tax years.  They contend that 26 U.S.C. § 7422(h) does not bar jurisdiction because the § 6501(a) statute of limitations is a nonpartnership item based on the specific facts of each partner's situation.  The district court granted summary judgment to the government because it concluded that the statute of limitations involved the determination of a partnership item and it thus lacked jurisdiction under § 7422(h).

The dispositive question is whether the Whites' and the Irvines' claim that the additional tax assessments were time-barred is a claim for a refund

7

attributable to partnership or nonpartnership items. "If the refund is attributable to partnership items, section 7422(h) applies and deprives the court of jurisdiction. If, on the other hand, the refund is attributable to nonpartnership items, then section 7422(h) is irrelevant, and the general grant of jurisdiction is effective." *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995). This claim also involves the significant interplay between § 6501(a) and § 6229(a), a separate provision that can extend the § 6501(a) period for partnership items. *See Curr-Spec Partners*, 579 F.3d at 396. "For partnership items, the otherwise applicable limitations period of IRC § 6501(a) shall not expire before the date which is 3 years after the later of the date on which the partnership return was filed or the date on which it was due." *Curr-Spec Partners*, 579 F.3d at 396 (internal quotations and alterations omitted); 26 U.S.C. § 6229(a). Section 6229 can extend the tax assessment period in a variety of ways, such as when the TMP enters into an agreement with the IRS to extend the period, § 6229(b)(1)(B), fraudulent returns are filed, § 6229(c)(1) or the partnership fails to file a return, § 6229(c)(3).

In *Weiner*, this court held that the § 6229 assessment period is a partnership item that cannot be raised in partner-level litigation. 389 F.3d at 157-58; *accord Keener v. United States*, 551 F.3d 1358, 1363-64 (Fed. Cir. 2009). The *Weiner* court explained that because the § 6229 limitations issue "affects the partnership as a whole, it should not be litigated in an individual partner proceeding, as such a result would contravene the purposes of TEFRA." *Weiner,* 389 F.3d at 157. Taxpayers argue that they have not raised a § 6229 argument, but instead rely only on § 6501. However, all of Taxpayers' attempts to distinguish *Weiner* ignore the fact that where a basis for a § 6229 extension is asserted, any limitations determination with regard to § 6501(a) must also

involve the resolution of § 6229, a partnership item. Where both are at issue, the § 6501 period cannot be separated from the § 6229 period.

The Federal Circuit has issued a decision resolving this exact issue involving another AMCOR partnership with reasoning that we find logical and persuasive. *See Prati v. United States*, 603 F.3d 1301, 1307 (Fed. Cir. 2010). As the *Prati* court explained, "[s]ections 6501 and 6229 operate in tandem to provide a single limitations period. When an assessment of tax involves a partnership item or an affected item, section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment." *Id.* (citing *Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 976-77 (D.C. Cir. 2003); *Grapevine Imports, Ltd. v. United States*, 71 Fed.Cl. 324, 328-39 (2006)). The Federal Circuit rejected the argument that a taxpayer could avoid the jurisdictional bar of § 7422(h) by raising a statute of limitations argument under § 6501 and failing to mention § 6229. *Id.* "Sections 6501 and 6229 do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely." *Id.* An unpublished decision of this court has already expressed approval of this reasoning. *See Matthews v. United States*, Civ. No. 00-4131, 2010 WL 2305750 (S.D. Tex. June 8, 2010), *aff'd sub nom. Scott v. United States*, 437 Fed. App'x 281 (5th Cir. 2011) ("essentially" approving the district court's opinion). We agree with the Federal Circuit that where the government asserts § 6229 as a basis to extend the § 6501(a) statute of limitations, the claim for refund is "attributable to" a partnership item and § 7422(h) bars consideration of the limitations claim. *Prati,* 603 F.3d at 1307; *Matthews*, 2010 WL 2305750, at *4. Partners were required to raise the statute of limitations issue in the partnership-level proceeding prior to settlement and are barred from raising it in the refund action. *See Prati*, 603 F.3d at 1307 & n.4.

No. 12-20523

Taxpayers argue that the IRS did not actually "assert" any basis for § 6229 extensions of the § 6501 limitations period. This is incorrect. The government has asserted that § 6229(b)(1)(B) (extensions by agreement of the TMP), and § 6229(c)(3) (indefinite tolling if no valid partnership return is filed) provide a basis for extending the assessment periods for each of the relevant partnerships. Further, in the partnership-level proceedings, the Tax Court found that § 6229 had extended the assessment periods. *See Agri-Cal Venture Associates,* 80 T.C.M. (CCH) 295, 2000 WL 1211147, at \*16, \*20, \*22. Taxpayers are correct that they are not bound by the Tax Court *Agri-Cal* decision because of their individual settlements. Thus, they argue that until the government actually proves these bases for an extension in the refund proceeding, jurisdiction is not barred. However, a refund court litigating or re-litigating a partnership item, such as the merits of the asserted § 6229 basis for an extension of the limitations period, is exactly the result prohibited by TEFRA. *See Weiner*, 389 F.3d at 158. Where a § 6229 basis for an extension is asserted, questions about whether the partnerships' returns were fraudulent, contained substantial omissions, were never filed, or were subject to any extension agreements are matters to be determined at the partnership level under TEFRA's statutory scheme.

Taxpayers also argue that jurisdiction is not barred because the limitations issue was converted to a nonpartnership item in their settlement agreements. *See Alexander*, 44 F.3d at 331. Taxpayers' argument here is foreclosed by *Weiner*. In *Weiner*, this court held that the assessment period was not converted to a nonpartnership item by the taxpayers' settlement with the IRS where it was not specifically mentioned in the settlement. *Weiner*, 389 F.3d at 156 n.2. As in *Weiner*, the settlement agreements here do not mention § 6229 and thus the item was not converted by the settlement agreements. *Id.*

In sum, because the § 6501 limitations period applicable to an individual partner cannot be determined without reference to the asserted bases for extensions under § 6229, which is a partnership item, the district court lacked jurisdiction over the statute of limitations claim under § 7422(h). We affirm the grant of summary judgment to the government on this claim.

### B.     *The Penalty Interest Claims*

Taxpayers next challenge the penalty interest assessed against them under 26 U.S.C. § 6621(c).  White and Irvine bring this claim in the alternative, while this is Kraemer's only claim.  Section 6621(c) imposed an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions." 26 U.S.C. § 6621(c) (1986); *see Duffie*, 600 F.3d at 372-73.  "The IRS may not assess interest under Section 6621(c) unless the substantial underpayment is attributable to one of the tax-motivated transactions defined by statute." *Duffie*, 600 F.3d at 373.  "Tax-motivated transactions include 'any sham or fraudulent transaction,' 26 U.S.C. § 6621(c)(3)(A)(v), and any use of an accounting method that may result in a substantial distortion of income, 26 U.S.C. § 6621(c)(3)(A)(iv)." *Id.* Penalty interest is an affected item, made up of both partnership and non-partnership components.  *See Duffie*, 600 F.3d at 378.  The partnership component is whether the partnership's transactions were tax motivated.  *See id.* The two non-partnership components of § 6621(c) interest are whether the individual taxpayer's underpayment was (1) "substantial," defined as being over $1,000, and (2) "attributable to" a tax-motivated transaction. *See id.*  Under this rubric, a claim for refund based on a partnership component of § 6621(c) interest is jurisdictionally barred under § 7422(h), but a claim contesting one of the non-partnership items can be adjudicated by a refund court. *Id.; see Weiner*, 389 F.3d

11

at 159-60 (determining whether the underpayment was "attributable to" a tax-motivated transaction).

Taxpayers assert that § 6621(c) penalty interest cannot be imposed as a matter of law because there was no prior binding determination that any of the partnerships' transactions were "tax motivated transactions." The government again argues that the district court lacked jurisdiction to consider this issue because whether a partnership engaged in tax-motivated transactions is a partnership item, and that even if the court had jurisdiction, the claims for refund are computational adjustments governed by a shortened statute of limitations and were not timely filed. After initially agreeing with the Taxpayers that the court had jurisdiction and that circuit precedent required refund of Taxpayers' § 6621(c) interest, the district court reconsidered and granted summary judgment to the government on the grounds that the claims for refund were untimely.

The government is correct that whether a partnership's transaction is tax-motivated is a partnership item which a refund court does not have jurisdiction to determine. *Duffie*, 600 F.3d at 378-79. However, the question Taxpayers raise is different; they argue that no tax-motivated determination was actually made in an applicable partnership proceeding or in their settlements, and thus that there has been no tax-motivated transaction determination at all. The government relies on *Duffie* to essentially argue that the district court lacked jurisdiction even to determine *whether* a tax-motivated determination was made. *Duffie* does not support this conclusion. The *Duffie* court looked to the partnership-level merits decision in the Tax Court, which found that the partnership's transactions were shams and lacked economic substance, and concluded that the determination was a sufficient finding that the transactions were tax-motivated and was binding on the unsettled partners seeking refunds.

600 F.3d at 378-80, 383. The court then explained that the Duffies' claim was attributable to the Tax Court's determination that the transactions were shams, and, "Because the nature of a partnership's activities—whether they are sham transactions—is the partnership-item component of an affected item, the Duffies' refund claim is based on the determination of a partnership item." *Id.* at 383. The court's holding that it lacked jurisdiction over the refund claims clearly hinged on its finding that a sufficient tax-motivated transaction determination was already made at the partnership level. *See id.*

This situation is not like the one in *Duffie.* A refund court need not litigate the merits of any partnership item to decide *whether* the required tax-motivated determination has been made. *See Duffie*, 600 F.3d at 383; *Weiner*, 389 F.3d at 162-63; *see also Bush v. United States*, 717 F.3d 920, 928-29 (Fed. Cir. 2013) (explaining that whether a tax-motivated transaction was made in a previous partnership-level proceeding is a jurisdictional fact). The district court does not have jurisdiction to revisit whether a partnership's transactions were actually tax-motivated, nor could the district court make that determination in the first instance. However, the district court does have jurisdiction to determine whether such a finding has previously been made, either in the partnership-level proceedings or in a settlement. We thus find that § 7422(h) does not bar jurisdiction over Taxpayers' claims that there was no tax-motivated determination supporting § 6621(c) penalty interest.

Next, the government argues that even if the district court had jurisdiction, Taxpayers' refund claims were not timely filed. Failure to timely file a refund claim deprives the court of subject matter jurisdiction for lack of a valid waiver of sovereign immunity. *Duffie*, 600 F.3d at 384. The regular deadline for filing a refund claim is two years from the date of payment or three years from the date of filing of a tax return, whichever is later. 26 U.S.C. § 6511(a); *see Duffie*, 600 F.3d at 385. Section 6230, however, supplants the

normal refund procedures and provides that for "[c]laims arising out of erroneous computations," taxpayers have six months from the date of notification to bring a refund claim, rather than the normal two years. *See* 26 U.S.C. § 6230(a), (c)(2)(A).

The question of whether the penalty interest refund claims were covered by the shortened deadlines in § 6230 is dependent on the question of whether the challenged adjustments including penalty interest are computational or substantive. *See Duffie*, 600 F.3d at 385. A computational adjustment to an individual partner's tax liability can be made at the conclusion of the partnership level proceeding "without any factual determination at the partner level." *Duffie*, 600 F.3d at 366; *see* 26 U.S.C. § 6231(a)(6). A substantive affected item, however, requires "fact-finding particular to the individual partner" before any adjustment to tax liability can be made. *Duffie*, 600 F.3d at 366. Computational and substantive affected items each require different assessment procedures. *Id.* at 385. For computational affected items, the IRS need not issue a statutory notice of deficiency, and § 6230 procedures and shortened time requirements apply. *Id.* By contrast, if the adjustment is a substantive affected item, the IRS must follow the normal deficiency procedures, including sending a notice of deficiency, and the normal § 6511(a) statute of limitations applies. *Id.*[5]

Where, as here, Taxpayers' refund claim is dependent on whether there was a sufficient tax-motivated transaction determination, and thus whether their underpayment was "attributable to" a tax-motivated transaction, *see Weiner*, 389 F.3d at 159-60, we find that § 6621(c) interest is a substantive affected item. This holding is supported by relevant case law. *See Duffie*, 600 F.3d at 386 (analyzing whether penalty interest was computational in that case)*;*

---

[5] The IRS assessed additional taxes and penalties against Taxpayers by notice of computational adjustment rather than by sending a notice of deficiency. However, we reject any argument that the IRS's chosen method of assessment is determinative.

*see also Weiner*, 389 F.3d at 159-62 (analyzing whether an underpayment is "attributable to" disallowed deductions); *McGann v. United States*, 76 Fed. Cl. 745, 751, 754-59 (Fed. Cl. 2007). In *Duffie*, though ultimately determining that the adjustments at issue in that case were computational, this court first determined whether the Tax Court's tax-motivated transaction determination was sufficient as a matter of law. *Duffie*, 600 F.3d at 378-80, 383. The *Duffie* court found that the tax-motivated transaction determination did not require a finding that an individual partner lacked a profit motive when engaging in the relevant transaction, and thus rejected the taxpayers' argument that the tax-motivated transaction determination was insufficient. *See Duffie*, 600 F.3d at 378. After making that determination, the "only issue" was whether the underpayment attributable to tax-motivated transactions was "substantial," i.e. whether it was over $1,000; "clearly a computational rather than a substantive issue." 600 F.3d at 386. Here, however, Taxpayers' claims for refund assert that their underpayment was not attributable to any transaction found to be tax-motivated. This is a non-partnership component of § 6621(c) interest. *See Duffie*, 600 F.3d at 378. Further, answering this question requires analysis of substantive issues, including review and application of each individual partner's settlement. *See Weiner*, 389 F.3d at 162-63. These claims require more than mere computations reflecting the treatment of partnership items. They are thus substantive and not computational, and Taxpayers claims are not governed by § 6230. We hold that Taxpayers' claims for refund of penalty interest were timely filed.[6]

Both parties agree that if the district court had jurisdiction over Taxpayers' penalty interest claims and those claims were timely, *Weiner* dictates

---

[6] Because we find that the claims were timely filed, we need not reach Taxpayers' additional argument that if § 6230 applies, the notices of computational adjustment sent by the IRS were not adequate to start the running of the statute of limitations.

that Taxpayers win on the merits of those claims. The FPAAs in *Weiner* listed several independent bases for disallowing the deductions, only some of which were tax-motivated transaction findings, the taxpayers settled and thus removed the need for a binding merits determination on any of the grounds for disallowance, and the settlements included no specific findings regarding the tax-motivated transaction issue. *See Weiner*, 389 F.3d at 162-63. The *Weiner* court found that in such a situation, "[t]here is no way, given the multiple reasons provided for the disallowance in the FPAAs, to determine whether the underpayments are 'attributable to' a tax motivated transaction." *Id.* The situation is identical here. *Weiner* thus dictates that the assessment of § 6621(c) penalty interest against Taxpayers was erroneous as a matter of law. Although other circuits have taken a different approach, *see e.g.*, *Keener*, 551 F.3d at 1367, *Weiner* is controlling in this circuit. We therefore reverse the grant of summary judgment to the government and render judgment in favor of Taxpayers on this issue.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the government on Taxpayers' statute of limitations claims. We REVERSE the district court's grant of summary judgment to the government and RENDER judgment in favor of Taxpayers' on their penalty interest claims. We REMAND for any further necessary proceedings, such as whether there is any remaining issue regarding the amount to be refunded to Taxpayers.